Norma Jean LODICO, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. No. 77–72265.

United States District Court, E.D. Michigan, S.D.

Dec. 3, 1982.

Ronald Reosti, Detroit, Mich., for plaintiff.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiff has brought this action against the United States, the Veterans Hospital of Allen Park, Michigan, the Veterans Administration, the Department of Interior, R. Eugene Konik, Claire Tedesco, Mansell G. Piper, Signe Larson, and Robert Smoak. She claims that she was denied employment by the Allen Park Veterans Hospital because of her political beliefs and activities. The five individual defendants earlier moved for summary judgment, claiming that they were immune from suit because they were merely performing their official duties and were doing so in good faith. This Court denied their motion in a Memorandum Opinion and Order on April 2, 1982. These defendants have now filed another motion for summary judgment, claiming that *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), has signif-

icantly changed the law of qualified immunity and requires that this Court reconsider its earlier order.[1] The Court agrees. For the following reasons, summary judgment is hereby granted in favor of defendants Tedesco, Piper, Larson, and Smoak. As to defendant Konik, however, summary judgment is hereby denied.

Many of the facts involved in this action are not disputed. Plaintiff was a reference librarian for the Department of the Interior from January, 1973 until January, 1976. In July, 1976 she applied for a position as Chief of the Library Service at the Allen Park Veterans Hospital. Her application was submitted to Konik, who was Assistant to the Chief of Staff at the hospital.

Larson was plaintiff's former supervisor at the Department of the Interior. Because plaintiff had listed Larson as a reference on her application, Konik contacted Larson seeking a recommendation. Larson stated that plaintiff's performance had been satisfactory, but gave Konik neither a positive nor a negative recommendation. She referred Konik to three other persons who she believed would have additional employment records in regard to plaintiff.

Smoak was one of these three persons. He was Chief of the Division of Records and Protective Service at the Department of the Interior. Konik contacted Smoak to learn more about plaintiff's employment history. Smoak informed Konik that plaintiff's records had been transferred to the Civil Service Commission when she left her job at the Department of the Interior. Smoak recommended that Konik call the Civil Service Commission to obtain these records.

Konik then contacted Tedesco, who was the Librarian at the Veterans Administration Central Office. He asked her to review plaintiff's Civil Service file, and she agreed to arrange for such a review. Tedesco then tried to obtain plaintiff's Civil Service file. She was told, however, that this was a confidential file and could be reviewed only by someone in the office of the Chief Medical Director, Department of Medicine and Surgery. She was further told that such a review would be arranged.

Piper was Executive Assistant to the Chief Medical Director at the Department of Medicine and Surgery, and he was the person who reviewed plaintiff's Civil Service file. After reviewing the file, he called Tedesco and asked her to instruct Konik that he should continue to accept applications until he was confident that he had selected the best qualified applicant available.

Tedesco conveyed this message to Konik. On August 17, 1976, Konik informed plaintiff that the search committee at the Allen Park Veterans Hospital, of which he was a member, had denied plaintiff's application for employment and had hired another applicant for the position.

Plaintiff then filed this action. She claims that the Civil Service file reviewed by Piper contains information relating to her lawful political activities and associations. She further claims that each of the individual defendants knew of these political activities, and that she was denied employment because of them. She seeks an injunction requiring that the defendant agencies remove all references to her lawful political activities from her personnel files, and requiring that the Allen Park Veterans Hospital offer her the same or a similar position. She also seeks to recover actual and punitive damages from all defendants, including these five individuals.

■ At issue on this motion for summary judgment is the individual defendants' claim that they possess a qualified immunity which prevents plaintiff from maintaining suit against them. It is well established that federal government officials are entitled to some form or degree of immunity from suits for damages. Legislators, judges, and certain Executive Branch officials are absolutely immune from suit. *Butz v. Economou,* 438 U.S. 478, 508–512, 98 S.Ct. 2894, 2911–2914, 57 L.Ed.2d 895 (1978). Other officials, like defendants, are entitled

1. The parties waived oral argument of this motion.

to a qualified immunity from suit. Before *Harlow, supra,* it had been held that such a government official could be held liable for damages only if he *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the (plaintiff), *or* if he took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury ..." *Harlow,* 102 S.Ct. at 2737, quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (original emphasis). Accordingly, this Court earlier denied defendants' motion for summary judgment. It found that there was a factual dispute as to whether defendants had acted in good faith, and that summary judgment was therefore inappropriate.

After *Harlow,* however, it no longer matters whether defendants acted in good faith. In *Harlow,* the Court held that presidential aides are entitled only to a qualified immunity. It then expanded somewhat the scope of the qualified immunity. The Court noted that there had previously been a subjective element to the defense of qualified immunity. It found that the litigation of an official's subjective good faith was often incompatible with its admonition in *Butz, supra,* that insubstantial claims against government officials should not proceed to trial. The Court concluded that:

> bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

102 S.Ct. at 2738.

Accordingly, these individual defendants are now immune from liability unless their actions violated "clearly established" consti-

tutional rights. The Court must therefore first determine what plaintiff's "clearly established" constitutional rights were at the time these events occurred.[2]

■ The leading case in this regard is *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Sindermann was a teacher in a state college system. After he had become president of a state college teachers association and disagreed publicly with the policies of the college's Board of Regents, the Board voted not to renew his teaching contract. Sindermann then brought suit against the Board, claiming that the Board's decision was based on his public criticism of their policies.

The Board contended that because Sindermann had no contractual right to re-employment, he could not challenge his dismissal. The Court rejected this argument, stating:

> [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which (it) could not command directly." *Speiser v. Randall,* 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.

408 U.S. at 597, 92 S.Ct. at 2697.

Accordingly, it was "clearly established" in 1976 that plaintiff had a constitutional right not to be denied a job because of her prior conduct which was protected by the

---

**2.** In *Harlow,* the Court noted that an official cannot be expected to anticipate subsequent legal developments. 102 S.Ct. at 2739.

First Amendment.[3] However, it was unclear in 1976 exactly what sort of adverse governmental action would be deemed to deny a person a "valuable governmental benefit". Indeed, the very definition of a "valuable governmental benefit" remains unclear today. It is clear that the denial of a job is the denial of a valuable governmental benefit. It is clear today that even lesser deprivations have been held to deny a person a valuable governmental benefit. In *Acanfora v. Board of Education,* 491 F.2d 498 (4th Cir.1974), *cert. denied,* 419 U.S. 886, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974), for example, the Court held that a school board could not transfer a person from a teaching position to an administrative position because of his exercise of his First Amendment rights. Similarly, in *Bernasconi v. Tempe Elementary School District,* 548 F.2d 857 (9th Cir.1977), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977), the Court held that a teacher could not be transferred from one school to another because she had criticized the school district's policies.

These cases demonstrate that actions short of the denial of a job can be deemed to deny a valuable governmental benefit. However, a *de minimis* deprivation is insufficient to state a claim under the First Amendment. In *Reichert v. Draud,* 511 F.Supp. 679 (E.D.Ky.1981), for example, plaintiff was a teacher who had released to the press a letter criticizing members of the board of education.[4] Shortly thereafter, she was informed that one course on her teaching schedule for the following year would be changed. She filed suit to challenge this change, claiming that it was a result of her public criticism of the board. The Court found that her conduct was protected by the First Amendment, and that her teaching schedule had indeed been changed in retaliation for this conduct. Nevertheless, the Court held that this change in schedule did not in itself deny plaintiff a valuable governmental benefit, and it dismissed her complaint.

It is clear, at least today, that the government cannot deny a person many important benefits because of that person's exercise of his or her First Amendment rights. What was unclear in 1976, and remains unclear today, is *exactly* which benefits cannot be denied. Bearing this in mind, the court must evaluate the alleged acts of each individual defendant and determine whether there remains any genuine issue as to any material fact which precludes granting summary judgment in favor of each defendant. Fed.R.Civ.P. 56(c).[5]

### 1. *Signe Larson*

■ Konik called Larson seeking a recommendation in regard to plaintiff's application. Larson referred Konik to three individuals who had possession of plaintiff's employment records. It is undisputed that Larson played no other part in the ultimate decision not to hire plaintiff.

Plaintiff contends that Larson refused to recommend plaintiff because Larson knew of plaintiff's political beliefs. Plaintiff's affidavit at ¶ 12. Larson, on the other hand,

3. Furthermore, the individual defendants in the case at bar could be expected to know this. *See Harlow, supra,* at 102 S.Ct. 2739.

4. Of course, *Bernasconi* and *Reichert* are post-1976 cases, and they therefore have no bearing on determining what plaintiff's clearly established rights were in 1976. They do demonstrate, however, that it is unclear even today which governmental actions deny a person a valuable governmental benefit.

5. Plaintiff contends that these individual defendants acted in concert, and that the actions of each are inextricably linked with the final decision not to hire her. For the purposes of this motion, however, the Court must evaluate the alleged actions of each defendant separately. As discussed above, each individual defendant is immune from suit unless his or her conduct violated a clearly established constitutional right. *Harlow, supra.* While plaintiff did have a clearly established right not to be denied a job because of her past conduct which was protected by the First Amendment, this right protected plaintiff only from a *decision not to hire her* which was made on an improper basis. *Perry v. Sindermann, supra.* She did *not* clearly have a similar right not to be denied a favorable recommendation, or not to have her application referred to other government officials. This distinction is of fundamental importance in determining whether each defendant is entitled to summary judgment in his or her favor.

states that she had no knowledge of plaintiff's political beliefs. Affidavit of Signe Larson at ¶ 10.

While these allegations do create a factual dispute, it is an immaterial dispute for the purposes of this motion. For even if Larson's failure to recommend plaintiff *was* caused by Larson's knowledge of plaintiff's political beliefs, this did not violate plaintiff's clearly established constitutional rights. In 1976 plaintiff did not have a clearly established right not to be denied a *favorable recommendation* as a result of her political beliefs. Indeed, it is unclear today whether this denied plaintiff a valuable governmental benefit. As a result, Larson is immune from a suit for damages in connection with this incident. *Harlow, supra.* Accordingly, summary judgment is hereby granted in favor of Larson.

### 2. *Robert Smoak*

■ Konik contacted Smoak in hopes of receiving more information about plaintiff's employment records. Smoak informed Konik that he no longer had these records and suggested that Konik call the Civil Service Commission.

Plaintiff argues that Smoak was aware of her political beliefs. Plaintiff's Affidavit at ¶ 13. In addition, a letter sent by Smoak to Robert J. Drummond on January 30, 1974 indicates that Smoak believed that plaintiff presented security problems. *See* attachment to plaintiff's brief. Indeed, Smoak apparently concedes that he did know of plaintiff's political beliefs.

Yet plaintiff does not allege that Smoak played any further role in the decision not to hire her. She alleges, at most, that Smoak referred Konik to the Civil Service Commission because he knew of her political beliefs. Even if this is true, however, plaintiff did not have a clearly established constitutional right not to have Konik referred to her personnel files. It has never been clearly established law that this in itself denied plaintiff a valuable governmental benefit. Accordingly, Smoak is immune from suit in this action, and summary judgment in his favor is hereby granted.

### 3. *Claire Tedesco*

As recommended by Smoak, Konik called Tedesco to obtain plaintiff's employment records. Tedesco tried unsuccessfully to obtain these records. Piper later called her and instructed her to tell Konik to continue accepting applications until he was certain he had selected the best qualified applicant available. She then called Konik and conveyed this message to him.

Tedesco states that the contents of plaintiff's Civil Service file were never disclosed to her, and that she knew nothing about plaintiff's political beliefs. Affidavit of Claire Tedesco at ¶¶ 13, 14. Plaintiff, on the other hand, claims that Tedesco told her about the information in plaintiff's Civil Service file, and that Tedesco stated that she believed that this file contained information about plaintiff's political beliefs. Plaintiff's Affidavit at ¶ 9.

Thus there is a factual dispute as to Tedesco's knowledge at the time of her involvement in these events. However, this dispute is also immaterial. At most, Tedesco complied with Konik's request that she attempt to locate plaintiff's employment records, and conveyed a message from Piper to Konik. Neither of these acts violated plaintiff's clearly established rights, even if they were performed because Tedesco knew of plaintiff's political beliefs. Accordingly, Tedesco is immune from suit in this action, and summary judgment in her favor is hereby granted.

### 4. *Mansell G. Piper*

■ Piper reviewed plaintiff's Civil Service file and asked Tedesco to inform Konik that he should continue to accept applications. Plaintiff alleges that his negative recommendation was based solely on his knowledge of the materials in her Civil Service file, which she alleges relate to her lawful political activities. Plaintiff further claims that Piper's negative recommendation was the "decisive opinion" which led to the denial of her application. Plaintiff's Brief at 9.

Piper apparently concedes that the Civil Service file he reviewed did contain information about plaintiff's political beliefs and

activities.[6] As discussed above, however, it was certainly not clear in 1976 that by making a negative recommendation in regard to plaintiff's application, Piper was denying plaintiff a valuable governmental benefit. Furthermore, plaintiff has not alleged that Piper participated in the actual decision not to hire her. Therefore, even if Piper made a negative recommendation because he knew and disapproved of plaintiff's political beliefs, this did not in itself violate a clearly established constitutional right. Accordingly, Piper is immune from suit in this action, and summary judgment in his favor is hereby granted.

### 5. R. Eugene Konik

■ Konik was Assistant to the Chief of Staff at the Allen Park Veterans Hospital, and a member of the search committee which was to hire a new Chief of the Library Service. As discussed above, he made several inquiries into plaintiff's employment history. He received Piper's instructions that he should continue to accept applications for the position. After receiving this message, he selected another applicant, Willis Leavens, for the position. Affidavit of R. Eugene Konik at ¶ 16.

Konik states that he did not know of plaintiff's political beliefs at any time prior to his decision to hire Leavens. *Id.* at ¶ 17. He further states that the search committee did not consider plaintiff's political beliefs in making its decision. *Id.*

However, Konik wrote a memorandum on August 3, 1976 stating that "Colonel Smoak . . . advised that our VACO security personnel check the file for security information on Mrs. Larson (sic) being held by the Civil Service Commission."[7] *See* Exhibit F to defendants' earlier motion for summary judgment. This indicates that even if Konik did not know what plaintiff's political beliefs were, he did know that her beliefs were in issue and that Smoak believed that he should obtain "security information" regarding plaintiff before deciding to hire her. This also tends to contradict Konik's assertion that he did not know of plaintiff's political beliefs and did not consider them in deciding not to hire her.

For this reason, summary judgment as to Konik must be denied. At the time of these events, plaintiff had a clearly established right not to be denied a job because of conduct which is protected by the First Amendment. *Perry v. Sindermann, supra.* If Konik denied plaintiff a job because of such conduct, his actions violated a clearly established constitutional right and he is accordingly not entitled to immunity from suit. Therefore, to determine whether Konik is entitled to immunity, the Court must determine whether plaintiff's application was indeed denied because of her political beliefs and activities.[8] This determination cannot be made at this point; it involves a material factual dispute which precludes granting summary judgment in favor of Konik.[9]

---

6. Piper does contend, however, that he never disclosed the contents of this file to Tedesco or anyone else. Declaration of Mansell G. Piper at ¶ 7.

7. Although this sentence refers to Mrs. *Larson's* security file, Konik obviously meant to refer to plaintiff's file. Indeed, the next paragraph of this memorandum states that Tedesco arranged to have Veterans Administration personnel "review Mrs. Lodico's file at the Civil Service Commission."

8. Defendants argue that because *Harlow* prohibits the Court from inquiring into the subjective good faith of these officials, it is irrelevant why any of the defendants acted as they did. However, this Court must still allow some inquiry into Konik's intent in regard to the rejection of plaintiff's application. In accord with

*Harlow,* it is irrelevant whether Konik acted with the malicious intent to injure plaintiff. It is highly relevant, however, whether Konik denied plaintiff's application because of her political beliefs. This inquiry is the heart of plaintiff's claim on the merits, and it is an inquiry that is not precluded by *Harlow.*

9. As to Konik, other factual questions remain as well. If plaintiff can in fact establish that Konik knew of her political beliefs and activities, that this conduct was protected by the First Amendment, and that his knowledge of this conduct played a substantial part in his decision not to hire her, Konik may then seek to prove that he would have decided not to hire her even if he had not known of her beliefs. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Accordingly, defendants' motion for summary judgment as to Konik is hereby denied.

IT IS SO ORDERED.