Lenore CRONOVICH, Plaintiff,

v.

The Honorables Richard D. DUNN, Chief Judge, Victor J. Baum, Theodore R. Bohn, Susan D. Borman, Thomas J. Brennan, Irwin H. Burdick, William Leo Cahalan, Robert J. Columbo, Michael J. Connor, Harry J. Dingeman, Jr., Patrick J. Duggan, Charles S. Farmer, Neal Fitzgerald, Thomas J. Foley, Horace W. Gilmore, William J. Giovan, Roman S. Gribbs, James A. Hathaway, John H. Hausner, Harold Hood, Charles Kaufman, Richard C. Kaufman, John R. Kirwan, James E. Mies, James Montante, John D. O'Hair, Roland L. Olzark, Maureen P. Reilly, Thomas Roumell, Harold M. Ryan, Peter B. Spivak, Michael L. Stacy, Joseph B. Sullivan, Henry J. Szymanski, Myron H. Wahls, Lucille A. Watts, John M. Wise, Millicent DiMaggio, as Personal Representative of the Estate of Andrew DiMaggio, John C. Donnelly, as Personal Representative of the Estate of the Honorable Joseph A. Moynihan, Jr., and James J. Rashid, as Personal Representative of the Estate of the Honorable Joseph G. Rashid, each in his/her official capacity as Judge of the Circuit Court for the Third Judicial Circuit of Michigan and each individually and personally, jointly and severally, Defendants.

Civ. No. 81–70518.

United States District Court,
E.D. Michigan, S.D.

Sept. 21, 1983.

See also, 573 F.Supp. 1340.

Susan Winshall, Susan Winshall & Assoc., P.C., Southfield, Mich., for plaintiff.

Joseph A. Sullivan of Bodman, Longley & Dahling, Theodore Sachs, of Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C., Detroit, Mich., for defendant Gilmore.

William B. McIntyre, Jr., Asst. Wayne County Corp. Counsel, Detroit, Mich., for defendants O'Hair and Columbo.

OPINION [*]

COHN, District Judge.

I.

This is a sex discrimination in employment case under 42 U.S.C. § 1983 filed February 18, 1981. Initially the Third Judicial Circuit of Michigan was the sole defendant. Today there are forty individual defendants, that is each person who held office as a Wayne County Circuit Court Judge between May 5, 1980 and July 15, 1981. In the aggregate these forty individuals constituted the Third Judicial Circuit between these dates.

The evolution of this case from a single body corporate defendant to forty individual defendants is explained in my opinion of March 3, 1983.[1]

---

[*] This is an expanded version of my bench opinion of August 31, 1983 and describes the orders subsequently entered.

1. This case has a long and complex history. On April 22, 1981 I denied plaintiff's application for preliminary injunctive relief.
On April 30, 1981 I granted defendant Wayne County's motion for summary judgment of dismissal following receipt of an acknowledgement that any money judgment in plaintiff's favor would be an expense properly includable in the budget of the Third Judicial Circuit.
On October 28, 1981 I entered an order granting defendant's motion for summary judgment on plaintiff's Title VII claim, 42 U.S.C. § 2000e et seq., on the grounds the position of Friend of the Court is a policymaking position excluded from Section 701(f) of Title VII, 42 U.S.C. § 2000e(f).
On October 28, 1981 I denied defendant's motion to dismiss on the grounds the complaint failed to state a claim upon which relief could be granted.

On October 28, 1982 I entered an order deferring judgment on defendant's motion for judgment on the pleadings on the grounds it is not a "person" under 42 U.S.C. § 1983 and is an arm of the State of Michigan immune from suit in federal courts under the Eleventh Amendment to the United States Constitution, pending further filings by the parties.
On October 28, 1982 I entered an order denying defendant's motion for summary judgment on the grounds Section 701(f) of Title VII limits the reach of 42 U.S.C. § 1983.
On February 3, 1983 I denied plaintiff's motion for relief from summary judgment of dismissal of her Title VII claim.
On February 3, 1983 I granted defendant's motion for judgment on the pleadings dismissing plaintiff's claim for infliction of emotional distress.
On March 3, 1983 I dismissed the Third Judicial Circuit as defendant on the grounds as an arm of the State of Michigan it is immune from suit under the Eleventh Amendment.
On April 29, 1983 I granted plaintiff's motion to file an amended complaint adding the indi-

Fairly read, plaintiff's Fourth Amended Complaint filed May 5, 1983, charges three separate acts of discrimination involving plaintiff and the position of Friend of the Court of Wayne County. The first act of discrimination was when plaintiff was not named Acting Friend of the Court on May 5, 1980 following the death of the incumbent Clayton Christenson. Christenson died on May 2, 1980 within two days of taking office. Christenson had been unanimously recommended to the Governor of Michigan[2] by the Wayne County Circuit Judges on March 24, 1980 following a selection process in which plaintiff placed second with a score .6 point lower than Christenson according to the ratings of a selection committee. Plaintiff alleges she was passed over or rejected when the Chief Judge of the Wayne County Circuit Court, defendant Richard Dunn, named L.M. Jacobs as Acting Friend of the Court.

The second separate act of discrimination occurred on June 30, 1980 when, following a selection process in which plaintiff was rated highest by a selection committee, a number of the defendants at a regular meeting of the judges of the Wayne County Circuit Court unanimously voted to defer making a recommendation to the Governor for the position of Friend of the Court to fill the vacancy, and was followed up on January 19, 1981 at a regular meeting of the Wayne County Circuit Court when a resolution authorizing re-advertising for the position was unanimously approved. The deferral and re-advertising for the position effectively passed over or rejected plaintiff.

The third separate act of discrimination occurred on July 15, 1981 when a number of the defendants at a regular meeting of the Wayne County Circuit Court voted to recommend Gerhard Ritsema for the position thereby passing over or rejecting plaintiff following a selection process in which

plaintiff was rated fourth by a selection committee.

Alternatively, plaintiff says she was retaliated against on each of these occasions because she had filed charges with the Equal Employment Opportunity Commission and in this court charging sex discrimination regarding certain prior personnel actions relating to her positions in the office of the Friend of the Court of Wayne County.

The Fourth Amended Complaint does not distinguish between defendants who were and were not present at the meetings of June 30, 1980, January 19, 1981 and July 15, 1981, or were or were not judges at those particular times or who may have been absent from one or more of those meetings because of illness, vacation, an excused absence or whose absence is unexplained. The Fourth Amended Complaint does not separately claim against defendant Dunn, who admittedly made the appointment of May 5, 1980.

Defendants have not yet answered. In response to the Fourth Amended Complaint and Plaintiff's Proposed Findings of Fact, filed June 15, 1983 at my request to simplify consideration of the motions which I knew would inevitably follow (See Pre-Trial Order No. 2), defendants have, with the exception of defendant Horace Gilmore who appears separately and defendant Estate of Joseph Rashid whose status as a defendant is not clear, filed seven motions which are now before me for decision. These motions are:

1. Motion to Dismiss Damage Claims for Failure to State a Claim upon which Relief can be Granted;

2. Motion for Summary Judgment or to Dismiss;

3. Motion to Strike Portions of Plaintiff's Complaint;

---

vidual judges of the Third Judicial Circuit as defendants.

2. While the office of Friend of the Court at the time of the events in question was technically filled by appointment by the Governor of Michi-

gan, he was effectively required to act only upon recommendation of a majority of the judges of the Third Judicial Circuit. *See Opinion of October 28, 1981* at p. 1.

4. Motion to Dismiss Claims Arising Before May 5, 1980 as Barred by Statute of Limitation;

5. Motion to Dismiss § 1983 Claim;

6. Motion to Dismiss Claims for Injunctive Relief Against all Defendants other than Dunn;

7. Motion for More Definite Statement.

Defendant Gilmore, appearing by separate counsel, has filed an additional two motions. His motions are substantially similar in content to those of the other defendants. Defendants, with the exception of defendant Gilmore, have also filed a Statement of Uncontested Facts, which does little more than admit some of the allegations.

Aside from the legal challenges to the Fourth Amended Complaint defendants' position is essentially two-fold. First, defendants say there were legitimate reasons for not appointing plaintiff Acting Friend of the Court, for deferring decision and readvertising the vacancy and for not recommending her to the Governor as Friend of the Court, and that these reasons have nothing to do with her sex and were not in retaliation for her prior filings with the EEOC and in this court. Second, defendants say plaintiff has failed to plead with particularity the actual vote, either for or against plaintiff, of each defendant who was present at the meetings of June 30, January 19 and July 15, it being admitted that the minutes' description of a unanimous vote each time was merely a reflection of the final formal action of the meeting and not the actual vote of each of the several judges present.

Plaintiff says the reason that all persons who were judges between May 5, 1980 and July 15, 1981 are named defendants is because there was a statutory obligation for them to be present at each meeting and participate in the recommendation for the new Friend of the Court and that participation in the formal vote constitutes a participation in the particular act of discrimination complained of and a sufficient basis for liability.

■ I am satisfied while there is some sorting out to be done by plaintiff by linking the particular defendants to the particular acts of discrimination complained of, this case can only be resolved by trial.[3] At this stage, the formal unanimity of the vote cannot be used as a shield behind which to hide discriminatory action.

■ Once plaintiff has formally linked the individual defendants to the separate acts of discrimination, some of the individual defendants may by an appropriate showing be eliminated on summary judgment.[4] It appears undisputed that some of the defendants favored plaintiff's appointment, or opposed the postponement of a recommendation and the re-advertising of the position, or were not present at a particular meeting for good and sufficient reason. I am satisfied that generally only a defendant who was actually present at the meetings on June 30 or January 19 can be charged with the act of discrimination charged in postponement of the recommendation and then re-advertising following the selection process attendant on the death of Christenson, and only a defendant who was at the July 15 meeting can properly be included as a defendant for the act of discrimination charged in passing over plaintiff in favor of Ritsema. A defendant who was present at a meeting of the executive committee of the Wayne County Circuit Court and voted to recommend action to the regular meeting at which the action was taken but was not at the meeting at which the action was taken is, in my opin-

3. Where plaintiff fails to allege which defendants are responsible for specific acts of discrimination as required for a § 1983 action, the appropriate remedy is leave to amend rather than dismissal. *Rivas v. State Board for Community Colleges and Occupational Education,* 517 F.Supp. 467, 474 (D.Colo.1981).

4. In an action alleging deprivation of constitutional rights by a dismissed school teacher, it has been held it would be unfair to make members of the school board who voted against dismissing the plaintiff respond in damages. *McDonough v. Kelly,* 329 F.Supp. 144, 151 (D.N. H.1971). *See also, Bogart v. Unified School Dist. No. 298,* 432 F.Supp. 895, 906 (D.Kan.1977).

ion, not liable for the action taken.[5] *See Lodico v. United States,* 571 F.Supp. 21 (E.D.Mich.1982). This of course results in the dismissal of defendant Gilmore since he resigned his judgeship on June 20, 1980, effective June 24, 1980.

With the foregoing as a predicate I can now discuss the seven pending motions with particularity.

## II.

### MOTION TO DISMISS DAMAGE CLAIMS AND MOTION FOR SUMMARY JUDGMENT

#### A.

■ Defendants have moved for a summary judgment of dismissal on the grounds they are immune from suit under the doctrine of absolute judicial immunity. The long recognized and widely accepted common law doctrine of judicial immunity generally shields judges from civil liability for judicial acts. The rationale underlying the immunity is the need for independence of the judiciary and the necessity of freedom from being harassed by vexatious actions. *Bradley v. Fisher,* 80 U.S. 335, 20 L.Ed. 646 (1872).

■ In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court clearly set down the necessary elements rendering a defendant judge immune from suit. First, the judge must be performing a judicial act and, second, the judicial act must be one within the judge's jurisdiction. 435 U.S. at 356, 360, 98 S.Ct. at 1104, 1105, 1106.

As early as 1879 the Supreme Court held that the doctrine of judicial immunity was inapplicable in a case involving a non-judicial act. *Ex Parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1879). For a recent reiteration, *see Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) and *Harlow v. Fitzgerald,* 457 U.S. 800, 808, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396, 406 (1982). *Accord Lynch v. Johnson,* 420 F.2d 818, 820 (6th Cir.1970).

As one commentator has put it:

A judicial act is an act which involves exercise of discretion or judgment. But the act of an administrative or ministerial officer does not become judicial simply because it requires some discretion and judgment; it becomes judicial only when there is an opportunity to be heard, and the production and weighing of evidence and a decision thereon. Service on a Board with only legislative and administrative powers does not constitute a judicial act, nor does the appointment of persons to such boards ...

The application of the doctrine of judicial immunity is restricted to its simple objective of protecting judicial freedom in the process of deciding civil and criminal cases. Where the initiative and independence of the judiciary is not effectively impaired, the doctrine of judicial immunity does not hold. (citations omitted)

Wilson, *Judicial Immunity—To Be or Not To Be,* 25 Howard L.J. 809, 814–15 (1982). *See also,* Barth, *Immunity of Federal and*

---

**5.** While Judge Shirley Hufstedler stated in *Johnson v. Duffy,* 588 F.2d 740 (9th Cir.1978), that § 1983 liability can be predicated not only on some kind of direct personal participation in the deprivation of protected rights but also on setting in motion a series of acts by others which the actor reasonably should know would cause others to inflict the constitutional injury, I am satisfied that participation in an executive committee meeting which recommended action to the regular meeting, standing alone, does not meet the causation requirement for liability under § 1983. There is nothing in the record to suggest the action taken at the regular meeting was a mere formality or simply a rubber-stamp-

ing of the preceding recommendation. Plaintiff's reliance on *Smith v. Losee,* 485 F.2d 334 (10th Cir.1973), and *Simineo v. School Dist. No. 16,* 594 F.2d 1353 (10th Cir.1979), in support of her assertion that defendant Gilmore's participation in an executive committee meeting is sufficient for § 1983 liability is misplaced. Those cases simply do not support this position. Also, plaintiff's suggestion that judges who were not at a meeting may be liable because of purposeful non-feasance, *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982), or because of a reckless or callous indifference to a federally protected right, *Smith v. Wade,* — U.S. —, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), is rather excessive.

*State Judges From Civil Suit*, 27 Case W.Res.L.Rev. 727 (1977); D'Angelo, *Immunity Under 42 U.S.C. § 1983: A Benefit To The Public?*, 12 Conn.L.Rev. 116 (1979).[6]

■ In *Ammons v. Baldwin*, 705 F.2d 1445 (5th Cir.1983), the Court of Appeals for the Fifth Circuit laid down a four-part test to determine whether an act is sufficiently judicial to warrant immunity.

> "We inquire whether: (1) the offending action is a normal judicial function; (2) it occurred in the judge's courtroom or chambers; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose 'directly and immediately out of a visit to the judge in his official capacity'. *Brewer v. Blackwell*, 692 F.2d [387] at 396 [5th Cir.1982] (*citing Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir.1981), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981)."

705 F.2d at 1447. Applying the test to the facts here militates against a finding of judicial immunity. The challenged actions are not within the realm of a normal judicial function. They did not occur in a courtroom or chambers, and did not involve a pending case. There is no right of appeal from the decision. Finally, while the claim of discrimination can be said to have arisen out of a visit to the judges in their official capacities, it was not in their official capacities as judges.

■ In *Supreme Court of Virginia, supra*, the U.S. Supreme Court implied a two-step analysis of potential liability in cases in which a judge may have performed other than a judicial function. The first step is to determine whether the judge acted in an official capacity. Assuming the action was official, a determination must be made concerning the particular function being performed by the judge when the disputed action takes place. In this regard, a judge may perform either a judicial, legislative or executive function. When a judge performs an executive role, the Supreme Court held, he or she may or may not have immunity depending upon which phase of the executive role is being performed. The Supreme Court defined two phases of the executive role—the ministerial phase and the prosecutorial phase. Ministerial actions include daily administrative activities and personnel decisions. Prosecutorial activities occur primarily when a judge participates in decisions involving the initiation of disciplinary proceedings, such as deciding whether to bring a criminal charge against a defendant.[7] There is no immunity when a judge acts in a ministerial phase. 446 U.S. at 736, 100 S.Ct. at 1977.

This is not the first time a federal district court in Michigan has been faced with the question of whether judicial immunity bars an action charging sex discrimination brought by a state court employee against a state court judge. In *Sherwood v. Farrar*, 9 E.D.P. ¶ 10,202 (W.D.Mich.1975), Judge Noel Fox held that a claim by a former court clerk against a court administrator and the presiding judge of the Dis-

---

6. The National Center for State Courts has repeatedly advised judges of the limited scope of the doctrine of judicial immunity, especially when civil and constitutional rights are at stake. *See for example, Nat'l Center for State Courts Reports*, Vol. 1, No. 2 (October 1978); *Nat'l Center for State Courts Report*, Vol. 1, No. 1 (September 1980); *Nat'l Center for State Court Reports*, Vol. 8, No. 4 (April 1981).

> "Judicial immunity ... has never provided a judge with a shield against all claims. While there have been isolated situations in which judicial immunity has not applied, the doctrine has been consistently rejected when the civil and constitutional rights of the parties are at stake."

*Nat'l. Center for State Courts Reports*, Vol. 1, No. 2 at p. 2 (October 1978).

7. While the Supreme Court is *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), did not define the terms "discretionary act" and "ministerial act" as applied in the context of qualified immunity, *infra*, it seems clear that as applied in the context of the doctrine of absolute judicial immunity ministerial acts encompass acts commonly considered discretionary so long as they are not prosecutorial in nature. *See also, Ex Parte Virginia*, 100 U.S. 313, 348, 25 L.Ed. 667 (1879), where the Supreme Court said,

> "Whether the act done by [a judge] [is] judicial or not is to be determined by its character, and not by the character of the agent."

trict Court for the 61st Judicial District in Grand Rapids, alleging retaliatory discharge based on the filing of a charge of sex discrimination with the Michigan Civil Rights Commission, was not barred by judicial immunity since the discharge was not incident to the decision of a case and thus not subject to the doctrine of judicial immunity.

I find that the separate acts of discrimination charged here were performed by the various defendants in the ministerial phase of their executive roles as defined in *Supreme Court of Virginia*. Accordingly, defendants' motion for summary judgment or to dismiss on the grounds of absolute judicial immunity will be denied.

### B.

■ Defendants assert alternatively they are protected under the more limited qualified immunity doctrine. As recently defined by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the doctrine of qualified immunity provides that:

"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. There is no real question but that the nature of the challenged actions taken in furtherance of the selection of the Friend of the Court necessarily involved the exercise of discretion in that they involved choice. Nor is there a question but that the law proscribing discrimination on the basis of sex and for retaliatory reasons was clearly established at the time of the alleged discrimination. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Plaintiff had an absolute right not to be discriminated against on the basis of her sex.

Defendants say their conduct was justified and they acted in good faith. They claim there were legitimate reasons for not appointing plaintiff to the position of Acting Friend of the Court, for deferring recommendation and readvertising the vacancy and for not finally recommending plaintiff to the Governor, and these reasons had nothing to do with her sex and were not in retaliation for her prior charges of discrimination.

"Since qualified immunity is a defense, the burden of pleading it rests with the defendant .... It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful."

*Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980); *Alexander v. Alexander*, 706 F.2d 751 (6th Cir.1983) (while plaintiff bears burden of pleading and proving deprivation of a federal right, assertion of qualified immunity is an affirmative defense which must be pleaded and proved by defendants). Defendants in their motion merely set forth conclusory statements that they are clothed with immunity because they acted in good faith without affirmatively pleading facts in support. Under *Gomez*, this is not enough. *See, Haislah v. Walton*, 676 F.2d 208 (6th Cir.1982); *Wolfel v. Sanborn*, 666 F.2d 1005 (6th Cir.1982); *German v. Killeen*, 495 F.Supp. 822, 831 (E.D.Mich. 1980).

■ On the record before me plaintiff has made out a *prima facie* case that sex discrimination played a part in the failure of defendants to appoint her as Acting Friend of the Court, in the decision to defer recommendation and to re-advertise, and in the failure to recommend her to the Governor to fill the vacant Friend of the Court position.[8] The burden of production now

---

8. Plaintiff has shown that 1) she is a woman; 2) she was qualified for the position of Friend of the Court; 3) despite her qualifications, defendants failed to appoint or recommend her for the position, and 4) with regard to the vacancy, defendants solicited applications for the position from persons with plaintiff's qualifications. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792,

rests upon defendants to articulate a legitimate, non-discriminatory reason for their actions. If defendants articulate some legitimate, non-discriminatory reason, plaintiff will have to show that the reason articulated is a pretext not worthy of belief. *Brooks v. Ashtabula Co. Welfare Dept., et al.,* 717 F.2d 263 (6th Cir.1983). However, at this stage a motion for summary judgment of dismissal is certainly premature.

## III.

### MOTION TO STRIKE

■ Defendants have moved to strike portions of plaintiff's Fourth Amended Complaint on the grounds they are immaterial and impertinent. Fed.R.Civ.P. 12(f) provides that the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Striking a portion of a pleading is regarded as something drastic. Motions under Rule 12(f) are viewed with disfavor and are infrequently granted. *Brown and Williamson Tobacco Corp. v. United States,* 201 F.2d 819 (6th Cir.1953).

■ I do note that those portions of plaintiff's complaint which defendants want stricken are largely irrelevant and perhaps violate Fed.R.Civ.P. 8(a)(2) which reads in relevant part,

"(a) A pleading which sets forth a claim for relief ... shall contain

(2) a short and plain statement of the claim showing that the pleader is entitled to relief ..."

However, I am satisfied that the issues will be sufficiently narrowed after defendants file their answers and in the pretrial statement and that requiring defendants to answer the Fourth Amended Complaint in its present form will impose no great burden of pleading. Accordingly, I believe that striking portions of the Fourth Amended Complaint is unwarranted.

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S.

## IV.

### MOTION TO DISMISS CLAIMS ARISING BEFORE MAY 5, 1980

Defendants have moved to dismiss claims arising before May 5, 1980 on the grounds they are barred by the statute of limitations. The Fourth Amended Complaint does not include claims arising before May 5, 1980. Reference to events occurring prior to that period of time are pled either as background or as elements of proof. While the court notes that this motion may have been filed in response to plaintiff's shot-gun approach, it is moot and accordingly will be denied. Likewise, plaintiffs' request for "relation back" of her Fourth Amended Complaint raised in her motion for leave to amend, filed April 11, 1983, is also moot and will be denied.

## V.

### MOTION TO DISMISS PLAINTIFF'S § 1983 CLAIM

Defendants have moved to dismiss plaintiff's claims under 42 U.S.C. § 1983 on the grounds the Title VII exemption for policymaking employees applies with equal force to § 1983. In the earlier stages of this litigation when the Third Judicial District was defendant, the same argument was made. For the reasons stated on the record at the hearing held on October 27, 1982, the motion will be denied. *See Posadas v. National City Bank,* 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936); *Owens v. Rush,* 654 F.2d 1370 (10th Cir.1981).

## VI.

### MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF

Defendants have moved to dismiss plaintiff's claim for injunctive relief against all defendants except defendant Dunn for failure to state a claim upon which relief can

248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

be granted, because under Section 23 of Michigan Public Act 294 of 1980, effective July 1, 1983, the chief judge of each circuit now has the authority to appoint the Friend of the Court for each judicial circuit in Michigan and thus only defendant Dunn has the authority to effectuate the injunctive relief plaintiff seeks.

Although equitable relief is available in an action under 42 U.S.C. § 1983, the decision to grant or deny such relief is to be made in the exercise of a sound discretion in light of the facts and circumstances of the particular case. *Decker v. North Idaho College,* 552 F.2d 872, 874 (9th Cir. 1977); *Burton v. Cascade School District Union High School No. 5,* 512 F.2d 850, 852–853 (9th Cir.1975), *cert. denied,* 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *Valcourt v. Hyland,* 503 F.Supp. 630, 631 (D.Mass.1980).

In the early stages of this case, plaintiff sought injunctive relief. Given my prior rulings as described in footnote 1 and the current posture of the case it is unlikely I would order injunctive relief, should I find in favor of plaintiff, separately from any verdict a jury might render. While by leaving the question open and hence its answer uncertain resolution of the dispute might be encouraged, I think it only proper that the parties understand fully the parameters of their dispute.

## VII.

### MOTION FOR MORE DEFINITE STATEMENT

Defendants have moved for a more definite statement on the grounds plaintiff's Fourth Amended Complaint is so vague and ambiguous they cannot reasonably be required to frame an answer. Except insofar as I have already indicated that plaintiff must delineate and distinguish between defendants who were or were not present at the meetings in question and were or were not judges at those particular times, the motion will be denied.

## VIII.

### A.

This case is almost three years old. In many respects it exemplifies the concerns Roscoe Pound spoke of over seventy-five years ago in his seminal paper, *"The Cause of Popular Dissatisfaction With the Administration of Justice"*, 29 A.B.A.Rep. 395 (1906), in which he decried "the common law doctrine of contentious procedure", *id.* at 403. Plaintiff's inability to properly focus her claims and defendants' hedgerow theory of a proper defense have contributed both to its delay and its excessiveness. Defendants' have the responsibility for the work of one of the largest metropolitan trial courts in the country; they certainly should be sensitive to the importance of a forthright and candid answer to plaintiff's claims. On reflection it should have been clear early on in this case that there were two principal issues, one legal and one factual. The first is whether defendants as judges are immune from suit. At least since Lord Coke's decision in *Floyd v. Baker,* 12 Coke Rep. 23, 77 Eng. Rep. 1305 (1607),[9] there has been little doubt that a judge can be held accountable for acts outside the courtroom. The second is whether plaintiff's sex played a role in the decision not to appoint her Friend of the Court. While some of the defendants may be eliminated on summary judgment it appears unlikely that the rather strict requirements of Fed.R.Civ.P. 56 would allow for a complete disposition in this manner. It is now time for defendants to answer the Fourth Amended Complaint and for the parties to go on to the trial of this case unless it is sooner resolved.

### B.

In summary, each of defendants' motions, with the exception of defendant Gil-

---

**9.** The significance of *Floyd v. Baker,* is discussed in *Harper v. Merckle,* 638 F.2d 848, 856, n. 11 (5th Cir.1981).

more's motion, will be denied. Additionally, an order will be entered to incorporate the following rulings as reflected in this opinion:

A. Plaintiff claims three separate acts of discrimination, to wit:

1. The May 5, 1980 action appointing L.M. Jacobs Acting Friend of the Court. Defendant Richard Dunn is the proper defendant under this claim.

2. The June 30, 1980 and January 19, 1981 actions deferring recommendation and readvertising the vacancy of the Friend of the Court position. Defendants who were present at the judges' meeting of June 30, 1980 or who were present at the judges' meeting of January 19, 1981 are proper defendants under this claim.

3. The July 15, 1981 action recommending the appointment of Gerhard Ritsema as Friend of the Court. Defendants who were present at the judges' meeting of July 15, 1981 are proper defendants under this claim.

4. In the event the parties are unable to reach agreement on the form of an order reflecting the proper defendants in accordance with the above, the court shall be advised.

B. Plaintiff may establish by discovery that a defendant who was not present at a meeting as described above is a proper defendant under the claim arising from the action taken at such a meeting because such defendant was deliberately absent to avoid participating in the action taken.

C. The entry of the order is without prejudice to the right of a proper defendant to move for summary judgment as to a particular claim on the grounds he or she is not properly chargeable with the action taken at a meeting as described above because he or she acted in opposition to the action taken at the meeting notwithstanding the minutes of a meeting's reflection of a unanimous vote.