The City of Bayou La Batre, the defendant in an action pending in the Mobile Circuit Court, appeals from that court's order denying its motion for a summary judgment. This Court permitted the City to appeal. See Rule 5, Ala.R.App.P. The appeal raises two issues: (1) Whether a municipality may be held liable for false imprisonment based on negligent acts of its agent, and (2) whether a magistrate has judicial immunity when recalling an arrest warrant.
 I. Factual Background
On April 27, 1997, Bayou La Batre police arrested Vernon Robinson and charged him with public intoxication. On September 2, 1997, he was found guilty of public intoxication, in the Bayou La Batre *Page 1130 
municipal court, and was ordered to pay a fine of $206. Three days later, Robinson paid $5.50 toward the amount due. Because he made no more payments on the fine, Bayou La Batre magistrate Donna Gainey, on November 18, 1997, issued a notice directing Robinson to show cause for failing to pay the fine. Robinson did not respond to the notice. Magistrate Gainey then issued a warrant for Robinson's arrest and sent the warrant to the Bayou La Batre Police Department.
On January 26, 1998, Robinson paid the remaining balance of his fine, as well as a $50 "contempt charge," and received a receipt that reflected his full payment of the balance due. Because Robinson had paid all the money owed to the City, Magistrate Gainey, on the same day, entered a "warrant-recall order." She then attempted to fax the recall order to the police department. However, she placed the recall order upside down in the fax machine so that she in fact transmitted the back of the order — a blank page — rather than the recall order itself. Magistrate Gainey then attached the recall order to the case action summary sheet and placed it in Robinson's file in her office. She never received the original warrant back from the police.
On the night of February 7, 1998, the Mobile County Sheriff's Department stopped a vehicle in which Robinson was a passenger. A check of Robinson's name through NCIC records[1] revealed an outstanding warrant for his arrest — the Bayou La Batre warrant issued for failure to pay the public-intoxication fine and a related fine on a contempt charge. The sheriff's department contacted the Bayou La Batre Police Department to confirm the existence of the outstanding warrant. When Officer Shane McClain of the Bayou La Batre Police Department looked in the drawer where the department keeps its warrants, he found the warrant for Robinson's arrest. Officer McClain instructed another officer to go to the sheriff's location and pick up Robinson on the warrant. The other officer picked up Robinson; when he was picked up, Robinson protested that he had paid the fine in full and had been issued a receipt. At approximately 2:30 on the morning of February 8, Robinson was brought to the Bayou La Batre jail. Robinson remained there for the next 12 hours. During this time, no one contacted Magistrate Gainey to confirm the status of Robinson's warrant.
Robinson sued Bayou La Batre, alleging false arrest and false imprisonment. On any claim against a municipality, liability cannot be imposed beyond the limitations set forth in § 11-47-190, Ala. Code 1975, which provides:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty. . . ."
(Emphasis added.) Bayou La Batre contends that the immunity of its agent as a judicial officer shields it from liability. Alternatively, it argues that Robinson's action alleges an intentional tort for which it cannot be liable, because of the provisions of § 11-47-190, Ala. Code 1975.
 II. Municipal Liability for False Imprisonment
We first address the question of a municipality's liability for false imprisonment. This Court at one time held that *Page 1131 
false-imprisonment claims against a municipality were barred by the doctrine of immunity. Boyette v. City of Mobile, 442 So.2d 61
(Ala. 1983). However, Boyette was expressly overruled in Franklin v.City of Huntsville, 670 So.2d 848 (Ala. 1995).[2] This Court stated in Franklin:
 "In reaching this result, we are not altering or modifying any existing cause of action. We merely state that where a plaintiff alleges a factual pattern that demonstrates `neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action under Ala. Code 1975, § 11-47-190. Whether the plaintiff's allegations state a cause of action and whether the plaintiff has presented substantial evidence creating a genuine issue of material fact can be evaluated by the trial court upon proper motion. Therefore, we conclude that the trial court properly dismissed the malicious prosecution claim against the city; however, the Rule 12(b)(6) dismissal of the claims alleging false arrest and false imprisonment is reversed."
670 So.2d at 852 (emphasis added).
The Legislature has defined "false imprisonment" as follows:
 "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."
§ 6-5-170, Ala. Code 1975. Had the Legislature intended to restrict the tort of false imprisonment to intentional acts, it easily could have chosen words far more specific than the word "unlawful" to characterize the conduct constituting the tort. The allegations of Robinson's complaint relating to the improper use of a fax machine describe conduct that could constitute "neglect, carelessness or unskillfulness." Assuming Robinson can present substantial evidence to support this allegation, we must conclude that to allow his claim to proceed would not violate the municipality's immunity granted pursuant to § 11-47-190.
 III. Judicial Immunity for the Act of Recalling a Warrant
We now turn to the extent to which the municipality can escape liability by reason of judicial immunity enjoyed by its magistrate. This Court recognized in Gore v. City of Hoover, 559 So.2d 163, 165 (Ala. 1990), that, under principles of vicarious liability, where a municipal employee enjoys immunity, the municipality likewise is immune as to claims based on the employee's conduct. While some aspects of Gore were overruled in Franklin, this holding as to immunity was not.[3] *Page 1132 
Broad policy interests support allowing immunity for judges acting within their judicial capacity:
 "Since the English common law doctrine of absolute judicial immunity was recognized in the United States, courts have held its application necessary to preserve the system established for the administration of justice and the law. Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent and impartial judgment about the merits of a case without apprehension of the personal consequences of exposure to potential damages liability from vexatious and frivolous actions prosecuted by disgruntled litigants."
46 Am. Jur. 2d Judges § 69 (1994) (footnotes omitted).
Judicial immunity does not apply to every act of a judge. "[A] judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Mireles v. Waco, 502 U.S. 9, 11
(1991) (citing Forrester v. White, 484 U.S. 219 (1988)).
 "The first step is to determine whether the judge acted in an official capacity. Assuming the action was official, a determination must be made concerning the particular function being performed by the judge when the disputed action takes place. In this regard, a judge may perform either a judicial, legislative or executive function. When a judge performs an executive role, the Supreme Court held, he or she may or may not have immunity depending upon which phase of the executive role is being performed. The Supreme Court defined two phases of the executive role — the ministerial phase and the prosecutorial phase. Ministerial actions include daily administrative activities and personnel decisions. Prosecutorial activities occur primarily when a judge participates in decisions involving the initiation of disciplinary proceedings, such as deciding whether to bring a criminal charge against a defendant. There is no immunity when a judge acts in a ministerial phase."
Cronovich v. Dunn, 573 F. Supp. 1330, 1336 (E.D.Mich. 1983) (citingSupreme Court of Virginia v. Consumers Union of the United States, Inc.,446 U.S. 719 (1980)) (holding that the justices on the Virginia Supreme Court were immune from suit because they had exercised a legislative, rather than an executive, function when promulgating rules that restricted advertising by attorneys in the state). In Cronovich, the court found that various acts of sex discrimination charged against the judicial defendants *Page 1133 
would have been performed by the "defendants in the ministerial phase of their executive roles" — thus, the defendants were not entitled to judicial immunity. 573 F. Supp. at 1337. See, also, Stump v. Sparkman,435 U.S. 349, 362 (1978) ("[T]he factors determining whether an act by a judge is a `judicial' one relate to the nature of the act itself."). A judge acting in his or her judicial capacity must enjoy freedom from risk of a lawsuit, lest the administration of justice be inhibited by fear of personal liability. See Dennis v. Sparks, 449 U.S. 24,31 (1980).
This Court has extended the principle of judicial immunity to the discretionary judicial acts of magistrates and clerks of court:
 "[W]here a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity. This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority."
Almon v. Gibbs, 545 So.2d 18, 20 (Ala. 1989) (citing Stump v. Sparkman, supra, and Scott v. Dixon, 720 F.2d 1542 (11th Cir. 1983)).
This extension of judicial immunity reflects the role that magistrates and clerks of court often play in our judicial system. In Almon, the clerk of court was sued for failing to issue a warrant. 545 So.2d at 20. This Court held that the determination of whether probable cause existed to issue a warrant is a judicial act, an act that properly affords judicial immunity. Id. The situation with which we are confronted today is whether a magistrate should be protected by judicial immunity for failure to properly recall a warrant.
We are not here dealing with the conduct of a judge acting under our unified judicial system. Magistrates are unique in Alabama's system of judicial administration. The office of magistrate is a hybrid creature, combining both clerical attributes and limited judicial attributes. See § 12-14-51(c), Ala. Code 1975 (listing the five statutorily authorized responsibilities of a magistrate, including "[a]ccountability to the municipal court for all uniform traffic tickets and complaints, moneys received and records of offenses"). In fact, Alabama law establishes that all municipal-court clerks are magistrates. See Ala. R. Jud. Admin. 18 I.(B)(1)(a); Curtis v. City of Sheffield, 502 So.2d 829
(Ala.Crim.App.), rev'd on other grounds, 502 So.2d 833 (Ala. 1986). While this Court has held that magistrates and clerks of court are entitled to judicial immunity for their discretionary judicial acts, see Almon, 545 So.2d at 20, clerks and magistrates should not enjoy the full benefit of judicial immunity when they are performing administrative tasks.
We have recently dealt with immunity of state agents, in Ex parteCranman, [Ms. 1971903, June 16, 2000] ___ So.2d ___ (Ala. 2000). A plurality there stated the basis for determining State-agent immunity in terms of whether the party was required to "exercise judgment" in the execution of the task. The Court adopted this standard in Ex parteButts, 775 So.2d 173 (Ala. 2000). Under the facts presented in this present case, we conclude that the magistrate, an official with a blend of judicial and administrative duties under § 12-14-51(c), Ala. Code 1975, was, when she faxed the warrant-recall order to the police department upside down, executing an administrative duty that did not involve the exercise of judgment. *Page 1134 
In reaching this conclusion, we follow a consistent line of cases from many other jurisdictions throughout the nation dealing with personal liability of administrative officials in the judicial system. InFranklin v. City of Dayton Probation Services Department,109 Ohio App.3d 613, 672 N.E.2d 1039 (1996), Franklin performed community service and paid a fine as a result of a traffic offense. However, for unknown reasons, the fact that he had paid the fine and performed the service was not properly recorded by the court and, as a result, a warrant was issued for his arrest. The police arrested Franklin, and he spent three days in jail. Franklin then sued the municipal-court clerk, alleging negligence and recklessness in the performance of his duties, negligence and recklessness Franklin claimed resulted in the improper issuance of a warrant for his arrest. The court held that Franklin had pleaded a justiciable claim against the clerk.
In Pittman v. Lower Court Counseling, 110 Nev. 359, 871 P.2d 953
(1994), overruled on other grounds, Nunez v. City of North Las Vegas, ___ Nev. ___, 1 P.3d 959 (2000), a defendant, Pittman, elected to perform community service rather than pay a fine for a driving violation. He performed his required service and returned to court with a signed letter attesting to his completion. He gave the letter to the court clerk, but the clerk never recorded it in the proper case file. A warrant was issued for Pittman's arrest, and two years later he was arrested on the outstanding warrant and spent two days in jail. The Nevada Supreme Court held that clerks are required to attend to official court documents and, therefore, that the clerk was not entitled to immunity for the negligent performance of a ministerial act. 110 Nev. at 364, 871 P.2d at 956.
In Smith v. Lewis, 669 S.W.2d 558 (Mo.App. 1984), a woman was arrested pursuant to a bench warrant that had been previously discharged; she sued the clerk of court and others. The Missouri Court of Appeals held her allegations were sufficient to withstand a motion to dismiss, and it remanded the cause for the trial court to make a factual determination as to whether the clerk's actions were judicial or were ministerial.
In Cook v. City of Topeka, 232 Kan. 334, 654 P.2d 953 (1982), the court held that a clerical error that resulted in the failure to properly recall an arrest warrant did not constitute a judicial act, but rather a ministerial act, and, thus, that the clerk of court was not entitled to judicial immunity.
In Mauro v. County of Kittitas, 26 Wn. App. 538, 613 P.2d 195 (1980), Mauro failed to pay a speeding ticket and a bench warrant was issued for his arrest. He later paid the ticket and received a receipt reflecting his payment. For unknown reasons, the warrant was never recalled and Mauro was later arrested on the warrant. The court held that the clerk who neglected to recall the warrant was not entitled to judicial immunity, because the required act of recalling the warrant was not discretionary, but purely ministerial.
In Dalton v. Hysell, 56 Ohio App.2d 109, 381 N.E.2d 955 (1978), superseded by statute as stated in Blankenship v. Enright,67 Ohio App.3d 303, 586 N.E.2d 1176 (1990), the court held that a clerk who negligently fails to record a defendant's payment of a traffic fine is not immune from an action for damages. The court stated that because the act was neither a discretionary act nor one done at the instruction of a judge, public policy provided no basis for granting immunity.
In Calhoun v. City of Providence, 120 R.I. 619, 390 A.2d 350 (1978), Calhoun was arrested on a warrant for which the underlying charge had been dismissed some months before. He sued the state and *Page 1135 
various employees of the court system, alleging a negligent failure to recall the arrest warrant. The court held that the trial court must make the factual determination whether the failure to properly recall the warrant rested with the judge, who would be entitled to immunity, or rather with the clerk of court, who would have been negligent in performing a ministerial task and thus not entitled to immunity.
In Connell v. Tooele City, 572 P.2d 697 (Utah 1977), the court found no basis in public policy to extend immunity to a clerk who negligently failed to record the payment of a traffic fine in the proper case file. Because of this oversight, the person who had paid the fine was later arrested and jailed.
In Stine v. Shuttle, 134 Ind. App. 67, 186 N.E.2d 168 (1962), the court held that a court clerk could be found liable for false imprisonment based upon his negligence in issuing a warrant for the arrest of a person who had paid his traffic fine. See, also, Claire E. Harkrider, AnAct-Based Analysis of Immunity and Its Application to UnconstitutionalActs of Court Clerks, 76 Minn. L. Rev. 1393 (1992) (analyzing the public-policy bases for extending judicial immunity to court clerks and proposing that courts look at the act of the clerk itself rather than the title of the actor when deciding whether to extend immunity).
Robinson is entitled to proceed against the municipality on his claim of negligence that he says led to the deprivation of his liberty, and the magistrate does not have judicial immunity for her acts that did not involve the exercise of judgment in the discharge of her administrative duties. Therefore, the trial court's order denying the City's motion for a summary judgment is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, See, and England, JJ., concur.
Brown and Johnstone, JJ., concur in part and dissent in part.
[1] The National Crime Information Center ("NCIC") operates a computer database that provides information on crimes committed in the several states.
[2] Bayou La Batre urges us to follow Ohio law, citing Bennett v. OhioDepartment of Rehabilitation Correction, 60 Ohio St.3d 107,573 N.E.2d 633 (1991), for the proposition that false imprisonment is an intentional tort. Even if the law in Alabama were not settled on this issue, we would note that Bennett is distinguishable because the complaint in that case explicitly alleged a knowing or intentional failure to follow the law; the allegation caused the Ohio court to observe that it had "no occasion herein to determine whether there is a cause of action for an official's negligent failure to follow the law in releasing a prisoner." Id., 60 Ohio St.3d at 110,573 N.E.2d at 636.
[3] See Richards v. Southeast Alabama Youth Services Diversion Center,105 F. Supp.2d 1268, 1289 (M.D.Ala. 2000). In that case, Judge Albritton correctly analyzed the effect of Franklin on that aspect of Gore dealing with immunity:
 "In Gore, the Alabama Supreme Court stated that because a city could only be held liable by respondeat superior, if the agent was immune from liability, the city was also immune from liability. [559 So.2d] at 165-66. In so holding, the court relied on cases establishing that where a jury has found that the agent is not liable, the principal also cannot be held liable. Id. This principle was later applied by the Alabama Supreme Court to county defendants in Roden v. Wright, 646 So.2d 605, 611 (Ala. 1994). Significantly, the Alabama Supreme Court also stated that if the agent was entitled to discretionary function immunity in his individual capacity, `the other Marshall County defendants, whose liability is based on the doctrine of respondeat superior, are similarly entitled to immunity.' Id. at 611. In so holding, the court relied on the Gore decision. Id. Although Gore was subsequently overruled by Franklin v. City of Huntsville, 670 So.2d 848 (Ala. 1995), the Franklin decision only overruled the language in Gore
indicating that a city could not be held liable for claims of negligent false arrest and imprisonment. [670 So.2d] at 852. As the Franklin court pointed out, Gore was distinct from Franklin in that the Gore
decision rested on the fact that the agent was immune, so the principal was also immune, while in Franklin there was no issue of `vicarious' immunity. [670 So.2d] at 851. The Alabama Supreme Court's overruling Gore does not, therefore, mean that the holding of Roden that the county and county commission could not be held liable for tortious interference and similar tort claims when their agent was given discretionary function immunity is overruled."