Rel: April 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0600
_____

### Ex parte Kim McCarson

### PETITION FOR WRIT OF MANDAMUS

### (In re: Steve Williams

### v.

### Calhoun County Commission and Kim McCarson)

### (Calhoun Circuit Court: CV-24-900325)

McCOOL, Justice.

Kim McCarson, the circuit clerk of Calhoun County, has petitioned this Court for a writ of mandamus, asking us to direct the Calhoun Circuit Court to dismiss the complaint filed against her by Steve Williams.[1]  For the reasons set forth herein, we grant the petition and issue the writ.

<u>Facts and Procedural History</u>

Williams is a licensed bail bondsman and the owner of Steve Williams Bail Bonding.  According to his complaint, in his role as a bail bondsman, Williams "act[s] as a surety for ... defendants" who are "criminally charged in Calhoun County" but are free on bond, which requires him to monitor those defendants to ensure that they comply with all laws and appear at all mandatory court proceedings.  In the event a defendant fails to comply with those requirements or otherwise "breaches the surety agreement," Williams "must obtain a bondsman's process" from the Calhoun County circuit clerk, which authorizes him "to arrest the defendant and remand custody back to the appropriate law enforcement agency."

---

[1]Judge Alaric May, a circuit judge in Jefferson County, is currently presiding over the proceedings in this case.

In June 2024, Williams filed a complaint against McCarson in her individual capacity.[2] According to the complaint,

"[Williams] has requested, and tendered payment, for a great deal of bondsman's process(es) from the Calhoun County Court Clerk … during his tenure as a bail bondsman and owner of Steve Williams Bail Bonding.

"When requesting a bondsman's process, but prior to receiving documentation from the Court Clerk necessary to effectuate an arrest of a defendant in which [Williams] acts as surety, the Calhoun County Court Clerk … required payment from [Williams] in the amount of Ten Dollars ($10.00).

"The Calhoun County Court Clerk …, in requiring payment from [Williams] relative to bondsman's process, is in direct violation of § 15-13-127[, Ala. Code 1975], … which states in pertinent part: 'There shall be no charge to the sureties for the issuance of a bondsman's process.' (Emphasis added.)"

Relying on those allegations, Williams asserted claims of negligence and wantonness and sought damages for "financial loss" and "mental anguish and emotional distress."

McCarson filed a motion to dismiss the complaint, arguing that she was entitled to "the absolute judicial immunity that's provided in § 12-17-5[, Ala. Code 1975,] because she was performing her duties associated

---

[2]Williams also named the Calhoun County Commission as a defendant, but he later agreed to dismiss the Commission from the case.

3

with a bondsman's process." Williams argued in response that McCarson was not entitled to judicial immunity for purely ministerial acts, and, according to him, "the issuance of a bondsman's process is ministerial in nature, not requiring McCarson to impart judgment nor exercise discretion"; "[i]t's simply checking a box." McCarson countered with the argument that "there's a lot of discretion that goes into [the issuance of a bondsman's] process." McCarson also attempted to explain the basis for the $10 fees that she had charged Williams. According to McCarson, she had not charged Williams for the bondsman's process but, instead, had "merely charg[ed] for copies and certifications and other items like that" -- a practice that she claimed to have discontinued in 2021.

Following a hearing, the circuit court issued an order denying McCarson's motion to dismiss the complaint. That order states:

> "McCarson's claim of statutory immunity relies primarily on factual issues which can only be ascertained through discovery. Any determination concerning whether McCarson is entitled to immunity would therefore be reserved as a summary judgment issue.
>
> "As such, dismissal pursuant to Rule 12(b) of the Alabama Rules of Civil Procedure is improper, as this Court cannot make the determination that [Williams] has made no claims upon which relief can be granted."

McCarson has now sought mandamus relief in this Court.

4

## Standard of Review

> "'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'
>
> "Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995). … The denial of a claim of judicial immunity is … reviewable by mandamus.  See Ex parte City of Greensboro, 948 So. 2d 540 (Ala. 2006)."

Ex parte Marshall, 323 So. 3d 1188, 1194-95 (Ala. 2020).

## Discussion

McCarson continues to argue, as she did in the circuit court, that, pursuant to § 12-17-5, Ala. Code 1975, she is entitled to "absolute judicial immunity" with respect to the claims Williams has asserted against her. Petition, p. 1.  Williams continues to argue in response that McCarson's immunity hinges on whether her allegedly illegal acts were discretionary or ministerial in nature, and, according to him, the issuance of a bondsman's process falls within the latter category.

Before 2019, Alabama caselaw provided that a circuit clerk was entitled to absolute judicial immunity for official acts that were discretionary in nature, Ex parte City of Greensboro, 948 So. 2d 540, 543

(Ala. 2006), but a clerk was not entitled to immunity for acts that were "not discretionary, but purely ministerial." City of Bayou La Batre v. Robinson, 785 So. 2d 1128, 1134 (Ala. 2000). However, in 2019, the Alabama Legislature enacted § 12-17-5, which states:

> "In the performance of any duties provided for by Sections 12-17-94(a) and 12-17-251(c), [Ala. Code 1975,] every magistrate and clerk of the circuit and district courts of this state shall have absolute judicial immunity from any liability arising from the execution of the duties provided for by Sections 12-17-94(a) and 12-17-251(c)."

Section 12-17-94(a)(1), Ala. Code 1975, provides that "[t]he duties of the clerks of the circuit court include ... [t]o sign and issue all summons, subpoenas, writs, executions, and other processes, under the authority of the court." (Emphasis added.) The "other processes" referenced in § 12-17-94(a)(1) include a bondsman's process. See § 15-13-124, Ala. Code 1975 ("A bondsman's process is that document which is issued by the clerk of the court that has jurisdiction over the defendant and sureties for the arrest of the defendant.").

According to McCarson, § 12-17-5 "abolished the ... distinction" between discretionary and ministerial acts "and replaced it with a functional analysis that looks only to whether the circuit clerk's actions 'aris[e] from the execution of the duties' provided by the statute," which

6

include the duties listed in § 12-17-94(a). Petition, p. 9 (quoting § 12-17-5). It is undisputed that the issuance of a bondsman's process is one of the "duties provided for by Section[] 12-17-94(a)." § 12-17-5. Thus, McCarson argues that she is entitled to the absolute judicial immunity provided by § 12-17-5.

Williams argues in response that § 12-17-5 merely "codified judicial immunity for certain court officials" and "did not abolish the long-recognized distinction between" discretionary and ministerial acts. Answer, p. 6 (emphasis in original). In support of that argument, Williams contends that this Court "reaffirmed that distinction -- after § 12-17-5's enactment -- in Ex parte Young, 352 So. 3d 1160 (Ala. 2021)." Id. (emphasis in original). In other words, Williams argues that "[Ex parte] Young ... confirms that § 12-17-5 protects only discretionary judicial acts, not routine or revenue-related administrative practices," and, according to him, "[t]he conduct alleged here -- the assessment of a [$10] fee for the issuance of the bondsman's process -- is administrative ... in nature." Id., p. 7 (emphasis in original).

Ex parte Young, 352 So. 3d 1160 (Ala. 2021), is the only case from this Court that has cited § 12-17-5. In that case, Danny Foster, an inmate

at the Ventress Correctional Facility, sued the Randolph County circuit clerk and one of the clerk's employees, alleging that they had failed to provide him with copies of various documents from his criminal cases. The defendants moved to dismiss the complaint on the basis that Foster's claim was "barred by the doctrine[] of judicial immunity." 352 So. 3d at 1163. After converting the defendants' motion to a motion for a summary judgment, the Randolph Circuit Court denied the motion, and the defendants sought mandamus relief in this Court. In denying that relief, this Court stated:

> "The doctrine of judicial immunity shields judicial officers from liability for actions taken while acting in their judicial capacity, and it extends even to actions taken by judicial officers that are done in error, maliciously, or in excess of their authority. See Stump v. Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Ex parte City of Greensboro, 948 So. 2d [540,] 542 [(Ala. 2006)]; and Almon v. Gibbs, 545 So. 2d 18, 20 (Ala. 1989). As this Court has stated, '[a] judge acting in his or her judicial capacity must enjoy freedom from risk of a lawsuit, lest the administration of justice be inhibited by fear of personal liability.' City of Bayou La Batre v. Robinson, 785 So. 2d 1128, 1133 (Ala. 2000) (citing Dennis v. Sparks, 449 U.S. 24, 31, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980)). Judicial officers, however, do not enjoy the benefit of judicial immunity when they are performing administrative or ministerial duties that do not involve the exercise of discretion. City of Bayou La Batre, 785 So. 2d at 1132 (citing Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991), citing in turn Forrester v. White, 484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)).

8

"....

"[The defendants] contend that they are entitled to judicial immunity because, they assert, they, like judges, are judicial officers who perform judicial functions. [The defendants] correctly note that judicial immunity extends to the discretionary judicial acts of clerks of court and magistrates. City of Bayou La Batre, 785 So. 2d at 1133. As this Court has stated, 'where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity.' Gibbs, 545 So. 2d at 20. See also § 12-17-5, Ala. Code 1975 (providing that circuit clerks have judicial immunity from any liability arising from the execution of their duties, which are statutorily prescribed in § 12-17-94(a), Ala. Code 1975). As noted above, however, when a clerk or magistrate performs a ministerial or administrative duty, judicial immunity has no application. City of Bayou La Batre, 785 So. 2d at 1132 (concluding that a municipal magistrate's failure to properly fax a warrant-recall order did not involve the type of judgment contemplated that would invoke judicial immunity and, instead, involved the performance of an administrative function).

"Foster's claim against [the defendants] is not a model of clarity. Adhering to the rules governing the liberal construction of pleadings, we construe Foster's claim to be one seeking a remedy under the Open Records Act, § 36-12-40 et seq., Ala. Code 1975. See Ex parte Perch, 17 So. 3d 649, 650 (Ala. 2009) (concluding that a state inmate's request for documents from his criminal case amounted to a request for public writings under the Open Records Act). Thus, whether judicial immunity applies would depend on whether [the defendants'] alleged actions or inactions in relation to Foster's records requests amounted to judicial functions or administrative functions."

9

Id. at 1166-68 (footnote omitted). Then, after citing caselaw to support the conclusion that the denial of a records request is not a discretionary act, the Court concluded:

"Foster's claim against [the defendants] seeks to compel the performance of an administrative duty. Although [the defendants] contend that Foster's allegations pertain to actions or inactions that they took in their official capacities, they have not made any assertion that they exercised any judgment or discretion in regard to processing Foster's requests for records. Judicial immunity, therefore, cannot serve as a bar to Foster's claim against [the defendants] for relief under the Open Records Act."

Id. at 1168-69.

It is clear from the foregoing that, in Ex parte Young, this Court acknowledged the absolute judicial immunity that § 12-17-5 provides to circuit clerks. However, it is also clear that the Court considered whether the defendants in that case were entitled to judicial immunity by analyzing whether their denial of the plaintiff's records request was a discretionary or ministerial act. Thus, according to Williams, this Court has already held that § 12-17-5 merely codified the discretionary/ministerial test that had been used to determine judicial immunity before the enactment of the statute.

10

We do not read <u>Ex parte Young</u> as containing that holding. First, this Court certainly did not expressly hold that § 12-17-5 is merely a codification of the discretionary/ministerial test that had been used to determine judicial immunity before the enactment of the statute. Rather, Williams's interpretation of <u>Ex parte Young</u> is based on the fact that this Court acknowledged § 12-17-5 as a source of judicial immunity and yet still analyzed the immunity issue in that case by applying the discretionary/ministerial test. However, this Court analyzed the immunity issue under that test because that was the argument that the defendants had made in their petition to this Court. Indeed, nowhere in their petition did the defendants even cite, much less discuss, § 12-17-5, and it is a well-established principle of appellate review that this Court addresses only the arguments that an appellant or petitioner has raised.[3] <u>See generally</u> <u>Ex parte M.P.</u>, [Ms. SC-2024-0684, Mar. 7, 2025] ___ So. 3d ___ (Ala. 2025). Plus, it is clear that this Court cited § 12-17-5 in <u>Ex parte Young</u> merely as support for the proposition that circuit clerks enjoy the same judicial immunity that judges enjoy. Thus, contrary to Williams's

---

[3]This Court may take judicial notice of its own records. <u>Griggs v. NHS Mgmt., LLC</u>, 419 So. 3d 12, 18 n.1 (Ala. 2024).

contention, this Court has not held that § 12-17-5 merely codified the discretionary/ministerial test that had been used to determine judicial immunity before the enactment of the statute.

With that said, "'[a]bsent a clearly expressed legislative intent to the contrary, the language of [a] statute is conclusive.'" Pruitt v. Oliver, 331 So. 3d 99, 111 (Ala. 2021) (citation omitted). Section 12-17-5 provides that a circuit clerk "shall have absolute judicial immunity from any liability arising from the execution of the duties provided for by Section[] 12-17-94(a)," and that statute makes no distinction between those duties in § 12-17-94(a) that are discretionary and those that are ministerial. Rather, § 12-17-5 provides, in no uncertain terms, that a circuit clerk's absolute judicial immunity extends to all duties that are included in § 12-17-94(a). As we have already explained, the issuance of a bondsman's process is one of those duties. Thus, pursuant to the plain and unambiguous language of § 12-17-5, McCarson is entitled to judicial immunity with respect to Williams's claims that seek damages based on her allegedly illegal act of charging him $10 for a bondsman's process. Whether the issuance of a bondsman's process is a discretionary or

12

ministerial act is simply of no consequence with regard to McCarson's immunity because the clear language of § 12-17-5 indicates that it is not.

Williams has raised two alternative arguments for denying McCarson relief, neither of which we find persuasive.

First, Williams argues that McCarson acted outside her authority when she charged him $10 for a bondsman's process, and, according to him, § 12-17-5 provides a circuit clerk with immunity only when the clerk "executes the duty <u>lawfully</u> when issuing the bondsman's process <u>without charge</u>." Answer, p. 8. That is incorrect. "The doctrine of judicial immunity ... extends even to actions taken by judicial officers that are done in error, maliciously, <u>or in excess of their authority</u>." <u>Ex parte Young</u>, 352 So. 3d at 1166 (emphasis added). That is not to say that there is no recourse against a circuit clerk who acts beyond his or her authority. Section 12-17-5 provides a circuit clerk with absolute judicial immunity "from any <u>liability</u>" (emphasis added), but nothing in the language of the statute prohibits an action that seeks injunctive or declaratory relief against a circuit clerk. However, Williams did not seek such relief in this case but, instead, sought to hold McCarson liable for damages -- liability that § 12-17-5 expressly prohibits.

13

Second, Williams argues that, "because the circuit court's order merely deferred a premature immunity ruling until summary judgment, [McCarson] cannot show a clear legal right to mandamus relief." Answer, p. 5. Once again, that is incorrect. The allegations in Williams's complaint, even when construed in his favor, clearly indicate that McCarson is entitled to the absolute judicial immunity provided by § 12-17-5, and "[a]bsolute immunity would not be absolute if it did not support a motion to dismiss." Bogle v. Galanos, 503 So. 2d 1217, 1219 (Ala. 1987). See also Ex parte Gilliland, 274 So. 3d 976 (Ala. 2018) (granting mandamus relief by instructing the trial court to grant a motion to dismiss that had asserted immunity as a defense).

## Conclusion

For the foregoing reasons, we hold that, pursuant to § 12-17-5, McCarson is entitled to absolute judicial immunity with respect to the claims that Williams has asserted against her. Thus, McCarson has a clear legal right to the dismissal of Williams's complaint, and, as a result, we grant her petition and direct the circuit court to dismiss Williams's complaint.

PETITION GRANTED; WRIT ISSUED.

14

Stewart, C.J., and Wise, Bryan, Sellers, Mendheim, Cook, and Parker, JJ., concur.

Shaw, J., concurs in the result.