MENDHEIM, Justice.
Police officer Charday P. Shavers and the City of Montgomery ("City") petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying Shavers and the City's joint motion for a summary judgment in a tort action filed against them by Carlishia Frank and to enter a summary judgment for them. We grant the petition and issue the writ.
I. Facts and Procedural History
On November 15, 2013, Shavers was driving her patrol car west on Hitching Post Lane when she received a dispatch about a vehicular accident. Thereafter, she stopped her patrol car on Hitching Post Lane at the traffic light at the intersection of that road and Eastern Boulevard. While stopped at the intersection, Shavers received a dispatch update that the accident involved a pregnant woman and that the other driver was trying to flee the scene.
In order to proceed through the intersection, Shavers had to cross four northbound lanes on Eastern Boulevard (including the left-turn lane) to travel south on Eastern Boulevard. The dashboard-camera in Shavers's patrol car indicates that, after receiving the dispatch update, Shavers activated the emergency lights on her patrol car. Between three and four seconds later, Shavers activated the siren. During that interval, Shavers waited for the northbound vehicles that had entered the intersection to pass through the intersection. Approximately one second after Shavers activated the siren, another northbound vehicle that had entered the intersection proceeded through the intersection.
Before Shavers's patrol car entered the intersection, the other vehicles traveling in the two northbound lanes closest to Shavers came to a complete stop. According to Shavers's deposition testimony, she believed the third lane (the lane farthest from her, excluding the turn lane) was clear, though Shavers admitted that her view of that lane was blocked by the vehicles stopped in the other two northbound lanes. As Shavers's patrol car began to cross the third lane, Frank's vehicle entered the intersection and collided with the driver's side of Shavers's patrol car. The collision occurred between four and five seconds after Shavers began slowly proceeding into the intersection, approximately nine seconds after Shavers had activated her emergency lights and approximately five seconds after she had activated her siren.
*158 It is undisputed that the traffic light regulating Frank's lane of traffic was green and that the traffic light regulating Shavers's lane was red. The Alabama Uniform Traffic Crash Report ("AUTCR") for the collision, which was prepared by an investigating officer for the City, indicates that Frank's vehicle was traveling at a speed of approximately 35 miles per hour when her vehicle collided with Shavers's patrol car. According to Shavers's deposition testimony, "[t]here [were] quite a few" vehicles stopped in the two lanes of northbound traffic on Eastern Boulevard when she began to proceed into the intersection. The AUTCR also includes a statement from a witness who was in a commercial truck "a good distance" behind Frank. The witness stated that, "due to vehicles in the road," Frank could not see Shavers's patrol car. Frank testified in her deposition that she first noticed Shavers's patrol car "when the accident happened" and that she did not see the stopped vehicles in the other two northbound lanes of Eastern Boulevard or the emergency lights on Shavers's patrol car. Shavers admitted in her deposition testimony that she had violated her training by proceeding into the intersection without knowing that the traffic in the third lane had stopped and that the City had determined she was "at fault" for the collision.
On October 26, 2015, Frank sued Shavers, in both her official capacity and her individual capacity, and the City of Montgomery in the Montgomery Circuit Court. Frank asserted two claims. The first claim alleged that Shavers was liable under theories of negligence and wantonness. The second claim alleged that the City was liable for Shavers's wrongful conduct under the theory of respondeat superior.
The City and Shavers, respectively, filed answers to Frank's complaint. The City and Shavers admitted Frank's allegation that Shavers was employed by the City at the time of the collision, and they denied all other allegations. The City and Shavers also asserted several affirmative defenses, including the defenses of State immunity and State-agent immunity.
On August 10, 2017, Shavers and the City filed a joint motion for a summary judgment, asserting that, pursuant to § 6-5-338(a), Ala. Code 1975, and Ex parte Cranman, 792 So.2d 392 (Ala. 2000), Shavers was entitled to State-agent immunity and the City was entitled to the benefit of Shavers's immunity pursuant to City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1131 (Ala. 2000). Shavers and the City submitted excerpts from Shavers's deposition, the dashboard-camera video from Shavers's patrol car, and the AUTCR in support of their summary-judgment motion. Shavers and the City argued that they had met their burden of showing that Shavers's actions qualified for State-agent immunity and that the burden had shifted to Frank to show that Shavers's actions fell within one of the two exceptions to State-agent immunity discussed in Cranman. See 792 So.2d at 405.
On September 14, 2017, Frank filed her opposition to the summary-judgment motion and a brief in support. Frank contended that Shavers had not complied with § 32-5A-7 and § 32-5A-115, Ala. Code 1975, regarding emergency vehicles and, thus, that neither Shavers nor the City was entitled to immunity. Frank included a single sentence addressing a part of the second exception to State-agent immunity as discussed in Cranman: "Shavers is not entitled to immunity because she acted beyond her authority."
On October 2, 2017, the circuit court entered an order denying Shavers and the City's joint motion for a summary judgment.
*159 Shavers and the City timely filed a petition for a writ of mandamus.
II. Standard of Review
" 'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.' Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000). A writ of mandamus is an extraordinary remedy available only when there is: '(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala. 2001)."
Ex parte Nall, 879 So.2d 541, 543 (Ala. 2003). Also,
"whether review of the denial of a summary-judgment motion is by a petition for a writ of mandamus or by permissive appeal, the appellate court's standard of review remains the same. If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P. In determining whether there is a [genuine issue of] material fact on the question whether the movant is entitled to immunity, courts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion for a summary judgment. Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000)."
Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002).
" 'When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Wright [v. Wright], 654 So.2d [542,] 543 [ (Ala. 1995) ] (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989) ).' "
Wilson v. Manning, 880 So.2d 1101, 1102 (Ala. 2003) (quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997) ).
III. Analysis
Shavers and the City contend that the circuit court erred in denying their joint motion for a summary judgment because, they say, pursuant to Cranman and § 6-5-338, Shavers is entitled to State-agent immunity, and the City is afforded the benefit of Shavers's immunity. Shavers and the City also argue that there is no evidence indicating that Shavers "acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority; and [that,] absent such a showing, she is entitled to immunity." Petition, at p. 10. We agree.
Section 6-5-338(a), Ala. Code 1975, states:
"Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as a peace officer ... by the state or a county or municipality thereof, ... and *160 whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."
This Court has also stated:
"It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune. Section 6-5-338(b) provides: 'This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.' ... See Ex parte City of Gadsden, 781 So.2d 936, 940 (Ala. 2000)."
Howard v. City of Atmore, 887 So.2d 201, 211 (Ala. 2003) (emphasis omitted).
This Court has held that "[t]he restatement of State-agent immunity as set out by this Court in Ex parte Cranman ... governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala. 2005)."[1] Ex parte City of Montgomery, 99 So.3d 282, 292 (Ala. 2012). Specifically,
"peace officers are afforded immunity by Ala. Code 1975, § 6-5-338(a), and the test for State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala. 2000), as modified in Hollis v. City of Brighton, 950 So.2d 300 (Ala. 2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in Cranman ).... Under that formulation,
" ' "[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
" ' "....
" ' "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975." '
" Hollis, 950 So.2d at 309 (quoting and modifying Cranman, 792 So.2d at 405 ). In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
" '(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
" '(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or *161 under a mistaken interpretation of the law.'
" Cranman, 792 So.2d at 405."
Suttles v. Roy, 75 So.3d 90, 94 (Ala. 2010) (emphasis omitted).
"A State agent asserting State-agent immunity 'bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.' [Ex parte Estate of Reynolds,] 946 So.2d [450,] 452 [ (Ala. 2006) ]. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable."
Ex parte Kennedy, 992 So.2d 1276, 1282-83 (Ala. 2008) ; see also Wilson, 880 So.2d at 1111 (noting that, when the burden at summary-judgment stage has shifted to the nonmovant, the nonmovant must present "substantial evidence from which a reasonable juror could infer" the existence of the fact at issue).
In order to establish that Frank's claims arose from a function that would entitle Shavers to State-agent immunity, Shavers and the City were required to "establish (1) that [Shavers was a] peace officer[ ] (2) performing law-enforcement duties at the time of the accident and (3) exercising judgment and discretion." Ex parte City of Homewood, 231 So.3d 1082, 1087 (Ala. 2017).
It is undisputed that Shavers was a police officer employed by the City and that she was performing a law-enforcement duty -- responding to an emergency dispatch -- at the time of the collision. Indeed, Frank alleged in her complaint that Shavers was acting within the line and scope of her employment with the City "at all times material to this suit." Also, in Frank's brief in support of her opposition to the motion for a summary judgment, Frank conceded that "Shavers had the discretion to proceed through the intersection against a red light." An act that requires discretion has been defined as one "requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996). Nevertheless, according to Frank, Shavers and the City failed to establish that Shavers was entitled to State-agent immunity because she purportedly failed to comply with § 32-5A-7, Ala. Code 1975. Section 32-5A-7 provides:
"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ..., may exercise the privileges set forth in this section, but subject to the conditions herein stated.
"(b) The driver of an authorized emergency vehicle may:
"....
"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
"....
"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of Section 32-5-213[, Ala. Code 1975,][2 ] and visual requirements of any laws of this state requiring visual signals on emergency vehicles.
"(d) The foregoing provisions shall not relieve the driver of an authorized *162 emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
Frank concedes that Shavers activated the emergency lights and siren of her patrol car, but Frank contends that Shavers did not "slow[ ] down as may be necessary for safe operation." § 32-5A-7(b)(2). Frank further argues that Shavers did not drive her patrol car with "due regard for the safety of all persons," § 32-5A-7(d), when she proceeded into the intersection. Specifically, Frank contends that Shavers did not allow a reasonable amount of time for traffic to clear the intersection and that Shavers did not slow down before entering Frank's lane.
Frank's argument construes § 32-5A-7 too broadly, effectively urging this Court to adopt a negligence exception to State-agent immunity in conjunction with that section. As this Court has previously stated, where a police officer is responding to an emergency call,
"the immunity afforded the peace officer ... is subject to, and limited by, the conditions imposed by § 32-5A-7. In the particular settings described by § 32-5A-7(a), the legislature has acted to restrain the manner in which the driver of the emergency vehicle may exercise his or her discretion and judgment.
"In Williams [v. Crook, 741 So.2d 1074 (Ala. 1999) ], a municipal police officer responding to a domestic-disturbance call on a rainy night elected to exceed the speed limit but not to turn on his patrol car's flashing blue lights and siren. 741 So.2d at 1075. A vehicular collision occurred, and the officer and the municipality by whom he was employed were sued. The trial court entered a summary judgment for the officer and the municipality, under § 6-5-338, based on the officer's explanation that he had exercised his discretion in deciding not to use his emergency signals 'because he was concerned that using them might alert anyone at the site of the domestic disturbance to the imminent arrival of the police and that anyone seeking to evade the police might thus have an opportunity to flee.' 741 So.2d at 1075. This Court reversed the summary judgment, agreeing that § 32-5A-7 gave the officer discretion to drive at a speed in excess of the speed limit but determining that, under the language of that statute, the officer did not have the discretion to exceed the speed limit without using his emergency signals. Section 32-5A-7(c) expressly states that the various exemptions granted an authorized emergency vehicle by that Code section would apply only when the vehicle is using acceptable audible and visual signals. 'Although [the officer] did have the discretion to decide whether he would drive in excess of the speed limit, once he made that decision he did not have the discretion to further decide whether he would comply with the audible- and visual-signal requirements of § 32-5A-7(c).' 741 So.2d at 1077.
"As noted, § 32-5A-7 not only authorizes the driver of an emergency vehicle to exercise the various privileges set forth in the statute, including exceeding the maximum speed limit when using acceptable audible and visual signals, it also provides specifically that the driver of the emergency vehicle exceeding the maximum speed limit may do so 'so long as he does not endanger life or property.' Section 32-5A-7(b)(3). Subsection (a) states that exercise of any of the privileges set forth in the statute is 'subject to the conditions herein stated.' Subsection (d) concludes the statement of privileges *163 with the declaration that they 'shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard to the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.' Obviously, the conditions imposed by subsections (b)(3) and (d) differ in degree from the audible-and visual-signals condition of subsection (c), in that the latter is an objectively 'absolute' restriction whereas the others are subjectively 'relative' restrictions. Nonetheless, the legislature saw fit to impose the restrictions in subsections (b)(3) and (d), and it is our obligation to determine the scope of those subsections and apply them to the facts of this case. We reject the argument made by Conner and the City in their brief to this Court that the actual speed at which Conner was traveling is 'irrelevant,' although we agree that it is within a police officer's discretion to drive at a speed in excess of the speed limit when driving an authorized emergency vehicle on an emergency run because the legislature has clearly provided that the officer may do so. Williams, 741 So.2d at 1077. The legislature has simultaneously declared, however, that an officer may do so only 'so long as he does not endanger life or property' and has further conditioned the exercise of that privilege by recognizing the officer's continuing 'duty to drive with due regard for the safety of all of the persons,' removing the protection of the privilege if the officer drives with 'reckless disregard for the safety of others.' "
Blackwood v. City of Hanceville, 936 So.2d 495, 505-07 (Ala. 2006) (emphasis added).
When Frank's vehicle collided with Shavers's patrol car, Shavers was responding to an emergency dispatch, clearly satisfying the requirement of § 32-5A-7(a). Having satisfied that requirement, Shavers had the right to "proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation." § 32-5A-7(b)(2). As clearly shown in the dashboard-camera video, after activating the emergency lights and siren on her patrol car, and starting from a complete stop, Shavers's patrol car slowly proceeded into the intersection. Shavers was not required to further slow her patrol car when entering each lane and crossing the intersection in order to satisfy the requirements of § 32-5A-7(b)(2). See also § 32-5A-7(c). Also, we note that, after Shavers activated her emergency lights and siren, there was a sufficient amount of time for two northbound lanes of traffic to stop before Shavers's patrol car entered the intersection. Thus, although Frank correctly notes that Shavers was required to satisfy the requirements of § 32-5A-7(a), (b)(2), and (c), she is incorrect in arguing that Shavers did not satisfy those requirements.
Relying on § 32-5A-7(d), Frank further argues that a material issue of fact exists as to whether Shavers acted "with due regard for the safety" of others. As to that issue, we must view the evidentiary submissions presented to the circuit court in the light most favorable to Frank, the nonmoving party. See Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000). Frank states in her answer to the petition that "[t]he clear evidence indicates that Shavers operated her lights and sirens for a mere 5 seconds." Frank then concludes that this is "substantial evidence that disputes the City and Shavers's version of facts and provides evidence upon which a reasonable jury could return a verdict for Frank." Frank's conclusion as to the facts, however, is not the same as the facts themselves; more importantly, the evidence submitted by the parties -- particularly the dashboard-camera *164 video -- contradicts both Frank's factual assertions and her conclusion as to the reasonableness of Shavers's actions. Before discussing those matters, however, we take this opportunity to note the importance of the dashboard-camera video.
The United States Supreme Court has noted that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In Scott, Victor Harris was being pursued in a high-speed chase by Deputy Timothy Scott.
"Six minutes and nearly 10 miles after the chase had begun, Scott decided to attempt to terminate the episode by employing a 'Precision Intervention Technique ("PIT") maneuver, which causes the fleeing vehicle to spin to a stop.' Brief for Petitioner 4. Having radioed his supervisor for permission, Scott was told to ' "[g]o ahead and take him out." ' Harris v. Coweta Cty., 433 F.3d 807, 811 (C.A.11 2005). Instead, Scott applied his push bumper to the rear of [Harris's] vehicle [because Scott concluded that the PIT maneuver could not be executed safely]. As a result, [Harris] lost control of his vehicle, which left the roadway, ran down an embankment, overturned, and crashed. [Harris] was badly injured and was rendered a quadriplegic.
"[Harris] filed suit against Deputy Scott and others under Rev. Stat. § 1979, 42 U.S.C. § 1983, alleging, inter alia, a violation of his federal constitutional rights, viz. use of excessive force resulting in an unreasonable seizure under the Fourth Amendment. In response, Scott filed a motion for summary judgment based on an assertion of qualified immunity. The District Court denied the motion, finding that 'there are material issues of fact on which the issue of qualified immunity turns which present sufficient disagreement to require submission to a jury.' Harris v. Coweta Cty., No. 3:01-CV-148-WBH, ... (N.D. Ga. Sept. 23, 2003), App. to Pet. for Cert. 41a-42a. On interlocutory appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the District Court's decision to allow [Harris's] Fourth Amendment claim against Scott to proceed to trial. Taking [Harris's] view of the facts as given, the Court of Appeals concluded that Scott's actions could constitute 'deadly force' under Tennessee v. Garner, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), and that the use of such force in this context 'would violate [Harris's] constitutional right to be free from excessive force during a seizure. Accordingly, a reasonable jury could find that Scott violated [Harris's] Fourth Amendment rights.' 433 F.3d at 816. The Court of Appeals further concluded that 'the law as it existed [at the time of the incident], was sufficiently clear to give reasonable law enforcement officers "fair notice" that ramming a vehicle under these circumstances was unlawful.' Id., at 817. The Court of Appeals thus concluded that Scott was not entitled to qualified immunity."
550 U.S. at 375-76, 127 S.Ct. 1769 (emphasis omitted; footnotes omitted).
In reversing the decision of the United States Court of Appeals for the Eleventh Circuit, the Supreme Court stated:
"The first step in assessing the constitutionality of Scott's actions is to determine the relevant facts. As this case was decided on summary judgment, there have not yet been factual findings *165 by a judge or jury, and [Harris's] version of events (unsurprisingly) differs substantially from Scott's version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.' United States v. Diebold, Inc., 369 U.S. 654, 655 [82 S.Ct. 993, 8 L.Ed.2d 176] (1962) (per curiam); Saucier [v. Katz ], [533 U.S. 194,] 201 [121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ]. In qualified immunity cases, this usually means adopting (as the Court of Appeals did here) the plaintiff's version of the facts.
"There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by [Harris] and adopted by the Court of Appeals....
"....
"... When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
"That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. [Harris's] version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."
550 U.S. at 378-81, 127 S.Ct. 1769 (footnotes omitted).
As in Scott, Shavers's dashboard-camera video depicts a different story than the story Frank suggests. For example, in her complaint, Frank alleges that, as she "drove into the intersection of East Boulevard and Hitching Post Lane, her vehicle was violently struck by Shavers's patrol car." In light of the video of the collision and the respective speeds at which Frank's vehicle and Shavers's patrol car were traveling, however, Frank's allegation is patently false. Likewise, Frank repeatedly states that there was only a five-second interval between Shavers's activation of her patrol car's emergency lights and siren and the collision. That simply is not the case. The dashboard-camera video depicts the following: Shavers activated her emergency lights; three to four seconds later Shavers activated her siren; approximately five seconds after Shaver activated her siren Frank's vehicle collided with the patrol car. In the interim, the dashboard-camera video reflects Shavers's patrol car slowly proceeding into the intersection with both the emergency lights and siren activated. And Shavers's patrol car entered the intersection only after the traffic in the intersection had cleared and the vehicles in the two lanes closest to Shavers's patrol car had stopped. In other words, the dashboard-camera video eliminates any reasonable contention that Shavers was driving without "due regard for the safety" of others or, more to the point, with "reckless disregard for the safety of others."
Frank attempts to construe this Court's rationale in Blackwood as supporting her argument. But Frank's argument fails to account for two important distinctions. First, Blackwood was decided before Hollis v. City of Brighton, 950 So.2d 300 (Ala. 2006), in which this Court expressly "expanded"
*166 category four of Cranman "so as to reflect § 6-5-338(a)." 950 So.2d at 309. Second, this Court emphasized the "unique evidentiary record" presented in Blackwood, 936 So.2d at 507. The evidence at issue in Blackwood established not merely that the conduct of the police officer at issue was "unreasonable" but that the conduct was so "unsafe" as to create a material issue of fact as to whether the officer had acted with "reckless disregard for the safety of others" in violation of § 32-5A-7(d). 936 So.2d at 507 ("[A]ssuming ... [Officer Steven] Conner was traveling at a minimum speed of 91 miles per hour while approaching the dangerous Johnson's Crossing intersection, he would be charged with notice that he was driving in a manner that endangered life or property and represented a reckless disregard for the safety of others." (emphasis omitted) ). No such unique evidentiary record is before us in the present case. Based on the dashboard-camera video, no reasonable juror could conclude that Shavers was acting with "reckless disregard for the safety" of others, even if a juror might conclude Shavers's conduct was negligent.
For similar reasons, we must reject Frank's argument that Shavers is not entitled to immunity because of the application of § 32-5A-115, Ala. Code 1975. Section 32-5A-115 states:
"(a) Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp and audible signal as is required by law, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with regard for the safety of all persons using the highways.
"(c) Authorized emergency vehicles shall be equipped with at least one lighted lamp exhibiting a colored light as hereinafter provided visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and a siren, exhaust whistle, or bell capable of giving an audible signal.... This provision shall not operate to relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right-of-way."
According to Frank, "Shavers did not comply with the provisions of [§] 32-5A-115(c) when she arbitrarily exercised right-of-way to such a degree that she failed to operate her emergency vehicle with due regard for the safety of all persons." Answer to Petition, at p. 11.
Frank's argument as to § 32-5A-115 would collapse paragraphs (b) and (c) of that section so as to impose a negligence standard when a police officer uses his or her discretion in exercising the right-of-way.[3] In other words, like Frank's argument as to the application of § 32-5A-7, Frank would have this Court construe a police officer's general "duty to drive with [due] regard for the safety of all persons,"
*167 § 32-5A-115(c), so as to effectively adopt a negligence exception to State-agent immunity. However, just as this Court declined to read similar language in the first clause of § 32-5A-7(d) as imposing a negligence standard in Blackwood -- noting that immunity was available unless "the officer drives with 'reckless disregard for the safety of others,' " 936 So.2d at 507 (quoting the last clause of § 32-5A-7(d) ) -- we reject Frank's argument that the language of § 32-5A-115 should be read as imposing such a negligence standard. A police officer using the emergency lights and siren on his or her patrol car is entitled to immunity as to his or her discretionary decisions in exercising the right-of-way, unless such actions constitute "an arbitrary exercise of such right-of-way." § 32-5A-115(d). To conclude otherwise would deprive a police officer of the benefit of State-agent immunity in conjunction with § 6-5-338(a) (providing that a police officer "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties").
Based on the foregoing, we conclude that Shavers and the City satisfied their initial burden of establishing that Frank's claims arose from a function that entitled Shavers to State-agent immunity. Accordingly, the burden shifted to Frank to demonstrate by substantial evidence that Shavers's actions fell within one of the exceptions to State-agent immunity. See Kennedy and Hobson, supra.
On appeal, Frank attempts to argue that her claims fall within the first Cranman exception to State-agent immunity, which provides that a State agent shall not be immune from liability in his or her individual capacity "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise." Cranman, 792 So.2d at 405. But, exception one does not apply in this case. Section 32-5A-7 and § 32-5A-115 are directed at any operator of an emergency vehicle. Those sections do not purport to "regulate[ ] the activities of a governmental agency." Cranman, 792 So.2d at 405.[4]
As for the second Cranman exception, which provides that a State agent shall not be immune from liability in his or her individual capacity "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," id., Frank argues that Shavers acted beyond her authority because she allegedly did not allow enough time to properly clear the intersection, in direct violation of her police training. As noted above, Shavers admitted in her deposition that the City had concluded she was "at fault" for the collision. Likewise, Shavers admitted that she had violated her police training by entering the third lane of the intersection without knowing that the traffic in that lane had stopped. Shavers further conceded that five seconds was not a reasonable amount of time in which to clear the intersection, though she was unclear whether her response time was limited to five seconds. As noted above, Shavers's total response time was longer than five seconds. But, regardless of those admissions, Shavers was engaged *168 in a discretionary act (proceeding through an intersection while responding to an emergency dispatch) that is regularly performed by police officers who are carrying out their law-enforcement duties. Even assuming Shavers violated her police training while exercising her discretion, she did not act beyond her authority in attempting to slowly proceed through an intersection, with the emergency lights and siren activated on her patrol car, in response to an emergency dispatch.
Also, Frank's claims against Shavers and the City are based on Shavers's alleged negligent or wanton conduct.
"This Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in Cranman. See Giambrone [v. Douglas], 874 So.2d [1046,] 1057 [ (Ala. 2003) ] (holding that State-agent immunity 'is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority')."
Ex parte Randall, 971 So.2d 652, 664 (Ala. 2007).[5] " ' "Reasonableness" is not the standard by which discretionary immunity [now called State-agent immunity] is reviewed. The standard to be applied is not a "reasonable" one, but, rather, whether the defendant acted in bad faith or with malice or willfulness.' " Hollis, 950 So.2d at 306 (quoting the City of Brighton's brief, citing Ex parte Davis, 721 So.2d 685 (Ala. 1998) ); see also Hollis, 950 So.2d at 306 ("Admittedly, if Officer Davis does not have immunity, the reasonableness of [his] order becomes the issue. However, if Officer Davis does have immunity, the reasonableness of [his] order is not at issue."). Likewise, negligent or wanton conduct will not support the conclusion that a police officer has acted beyond his or her authority when he or she is exercising discretion in the discharge of his or her law-enforcement duties. As this Court has recently stated: "In Taylor v. Shoemaker, 605 So.2d 828 (Ala. 1992), cited with approval in Cranman, the Court noted that the holding in Elmore v. Fields [, 153 Ala. 345, 45 So. 66, 67 (1907),] that the commission of a tort constituted acting beyond authority, ha[s] subsequently been very clearly rejected." Ex parte Utilities Bd. of City of Foley, 265 So. 3d 1273, 1283 (Ala. 2018).
Based on the foregoing, Shavers established that she was performing a function that entitled her to State-agent immunity under Cranman, and Frank failed to present substantial evidence to create a genuine issue of material fact as to whether Shavers's actions fell within one of the exceptions to State-agent immunity. Accordingly, Shavers was entitled to a summary judgment as to Frank's claims against her in her individual capacity.
*169 As noted above, Frank also named Shavers as a defendant in her official capacity. However, Frank may not prosecute a claim for money damages against Shavers in her official capacity. See § 6-5-338(a) (noting that a municipal police officer is an "officer of this state"); Ex parte Moulton, 116 So.3d 1119, 1140 (Ala. 2013) ("[A]ctions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under § 14[, Ala. Const. 1901]."); see also, e.g., Ex parte Alabama Peace Officers' Standards & Training Comm'n, 34 So.3d 1248, 1253 (Ala. 2009) (directing trial court to dismiss official-capacity claims, because, based on State immunity, the trial court acquired no subject-matter jurisdiction); Ex parte Burnell, 90 So.3d 708 (Ala. 2012) (holding claims for monetary damages barred by the doctrine of State immunity). Thus, Shavers was also entitled to a summary judgment as to Frank's official-capacity claims.
As for Frank's vicarious-liability claims against the City, because Shavers is entitled to immunity, the City is entitled to the benefit of Shavers's immunity. See, e.g., City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1131 (Ala. 2000) (affirming the Court's previous holding that, "under principles of vicarious liability, where a municipal employee enjoys immunity, the municipality likewise is immune as to claims based on the employee's conduct"); Hollis, 950 So.2d at 306 ("[I]f Officer Davis is immune, then so is the City, which employed him.").
Based on the foregoing, Shavers and the City have demonstrated that the circuit court exceeded its discretion in denying their joint motion for a summary judgment. See Ex parte Hartford Ins. Co., 394 So.2d 933, 936 (Ala. 1981).
IV. Conclusion
Shavers and the City's petition for a writ of mandamus is due to be granted. We direct the Montgomery Circuit Court to vacate its order denying Shavers and the City's joint motion for a summary judgment and to enter an order granting that motion.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Main, Wise, Bryan, and Sellers, JJ., concur.
Parker, J., dissents.

Although Cranman was a plurality decision, the restatement of law as it pertains to State-agent immunity set forth in Cranman was subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala. 2000).

Section 32-5-213 describes the siren requirements for ambulances and police and fire-department vehicles.

We recognize that § 32-5A-115(a) places a duty on the driving public, not the operator of an emergency vehicle, to yield the right-of-way to an authorized emergency vehicle using its emergency lights and siren. The duties of the operator of an emergency vehicle under § 32-5A-115(b) and (c) must be read in that context.

Frank argues that Shavers was "operating her vehicle in direct contravention of the law, in direct violation of the rules, regulations, policies and procedures provided to her while being trained by the Montgomery Police Department." Frank's brief, at p. 20. However, except for § 32-5A-7 and § 32-5A-115, Frank submitted no "enacted or promulgated" law, rule, or regulation "of this State" that Shavers was required to follow.

This Court has stated:
" ' "Willfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.' Instruction 29.01, Alabama Pattern Jury Instructions-Civil (2d ed. 1993); see also Roe v. Lewis, 416 So.2d 750, 754 (Ala. 1982) (willfulness 'denotes an intention to cause an injury'). Similarly, malice is defined as '[t]he intent, without justification or excuse, to commit a wrongful act....' Black's Law Dictionary, 968 (7th ed. 1999)."
Ex parte Nall, 879 So.2d 541, 546 (Ala. 2003). The materials before us contain no evidence that would support the conclusion that Shavers acted willfully or maliciously. Additionally, there is no evidence indicating that Shavers acted fraudulently, in bad faith, or under a mistaken interpretation of law.